CC-1996-1                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ligia M. Ortiz Rivera y otro<br>        Peticionarios<br><br>                    v.<br><br>Mercedes M. Bauermeister,<br>Directora Administrativa de los<br>Tribunales<br>        Recurrida<br><br>Fernando Campoamor Redín<br>        Interventor | Certiorari<br><br>2000 TSPR 145 |

Número del Caso: CC-1996-0001

Fecha: 10/02/2000

Tribunal de Circuito de Apelaciones:

                    Circuito Regional I

Juez Ponente:

                    Hon. Broco Oliveras

Abogados de la Parte Peticionaria:

                    Bufete Nazario & Santiago
                    Lcdo. José Nazario de la Rosa
                    Lcdo. Juan Santiago Nieves
                    Lcdo. Fermín L. Arraiza Navas

Abogado de la Parte Recurrida:

                    Lcdo. Edwin Franqui González

Abogado de Fernando Campoamor Redín:

                    Lcdo. Fernando Olivero Barreto

Materia: Mandamus

        Este documento constituye un documento oficial del Tribunal Supremo que está
        sujeto a los cambios y correciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ligia M. Ortiz Rivera y otro

     Demandantes peticionarios

         v.

Mercedes M. Bauermeister,           CC-1996-1
Directora Administrativa de los
Tribunales

     Demandada recurrida

Fernando Campoamor Redín

     Interventor

**Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN.**

En San Juan, Puerto Rico, 29 de septiembre de 2000

I

Los peticionarios, Ligia M. Ortiz Rivera y Héctor Ortiz Rivera, son hermanos y miembros de la Sucesión de Ramón Ortiz Ortiz (en adelante Sucesión Ortiz). Dicha Sucesión ha presentado, además del recurso que nos ocupa, una diversidad de pleitos y quejas contra el Ex Juez Fernando Campoamor Redín.[1]

---

[1] La Sucesión Ortiz presentó dos acciones civiles, la Civil Núm. JAC-89-2509 y la Civil Núm. JAC-89-0036, contra el Ex Juez sobre reivindicación y daños a su propiedad. Los pleitos civiles fueron consolidados y resueltos a favor de la Sucesión Ortiz mediante Sentencia de 11 de marzo de 1993.

La Sucesión Ortiz también solicitó ampliación de querella respecto a diversas investigaciones de conducta profesional sobre actuaciones del Ex Juez que llevaban a cabo tanto el Departamento de Justicia como la Oficina de Administración de Tribunales. Además, presentaron: (i) una querella criminal ante el Secretario de Justicia que provocó que éste nombrara un Fiscal Especial Independiente; (ii) una queja que imputó al Ex Juez haber modificado un proyecto de minuta sobre una inspección ocular dentro del pleito civil de reivindicación y daños

Igualmente, han sido diversas las ocasiones en que este Tribunal ha examinado controversias relacionadas a la conducta profesional del Ex Juez Campoamor Redín.[2] Hoy nos limitamos a resolver si la Sucesión Ortiz tiene derecho a examinar el expediente investigativo preparado por la Oficina de Administración de Tribunales (en adelante la OAT) en un procedimiento disciplinario donde se desestimó la queja sin determinarse causa probable. Examinemos los hechos pertinentes a la controversia ante nos.

II

El 28 de septiembre de 1992, el periódico El Vocero publicó una noticia la cual imputaba al entonces Juez Superior, Fernando Campoamor Redín, haber incurrido en conflicto de intereses en el caso criminal de Pueblo v. Pablo Colón Mejías, Cr. Núm. M-91-53, en el antiguo Tribunal Superior, Sala de Aibonito. En síntesis, la noticia le atribuía haber presidido un juicio por tribunal de derecho en el cual el acusado era hermano de su secretaria de sala, la Sra. Olga E. Colón Mejías.

A raíz de la publicación de la referida noticia, la OAT inició, motu proprio, una investigación sobre la conducta del juez en el caso criminal. Efectuada la misma y vertidos los hallazgos en el correspondiente Informe de Investigación, la Oficina de Asuntos Legales de la OAT envió dicho informe a su Directora Administrativa, la Lcda. Mercedes Marrero de Bauermeister, y al Juez Presidente del Tribunal Supremo, Hon. José A. Andréu García. Analizados los hallazgos de la investigación, el Juez Presidente ordenó el archivo del asunto el 3 de marzo de 1993.

Más de un año después de terminada la investigación antes descrita, mediante carta de 21 de marzo de 1994, la Sucesión Ortiz solicitó a la Directora de la OAT que le informara

---

donde la Sucesión era la parte demandante y el Ex Juez era el demandado. Esta última queja resultó en una Opinión de este Tribunal censurando enérgicamente al Ex Juez. Véase, In Re Fernando Campoamor Redín, Op. de 19 de enero de 1996, 139 D.P.R. ___ (1996), 96 JTS 5.

También la señora Ortíz Rivera nos solicitó, mediante una moción informativa y urgente solicitud de separación temporera del ejercicio y descargo de sus funciones, que adoptáramos medidas disciplinarias contra el magistrado. Finalmente, la Sucesión ha presentado varias peticiones y recursos con el fin de obtener acceso a los documentos e informes que obran en los expedientes de las diversas investigaciones administrativas llevadas a cabo tanto por la OAT, como por el Departamento de Justicia.

[2] En total hemos tenido ocho (8) recursos ante nuestra consideración de los cuales han resultado dos Opiniones además de la presente. Éstas son: (i) Sucn. de Ramón Ortiz Ortiz v. Campoamor Redín, 125 D.P.R. 106 (1990); e (ii) In Re Fernando Campoamor Redín, Op. de 19 de enero de 1996, 139 D.P.R. ___ (1996). Sólo queda ante nuestra consideración Ligia M. Ortiz Rivera, Héctor R. Ortiz Rivera v. Panel sobre el Fiscal Especial Independiente y otros, CC-98-249.

lo siguiente: (i) en cuál etapa se encontraba la investigación antes descrita, (ii) cuál había sido el resultado de la misma; y (iii) si se había rendido algún informe. Además, **solicitó que se le permitiese examinar el expediente de investigación, el informe rendido y la determinación final**.

Mediante carta de 13 de abril de 1994, la licenciada Marrero de Bauermeister le indicó a la Sucesión Ortiz que la investigación sobre la participación del licenciado Campoamor Redín como juez en Pueblo v. Colón Mejías se originó como resultado de la noticia publicada en el periódico El Vocero. Le informó, además, que durante la misma se revisó todo el expediente judicial del caso criminal, se interrogó a testigos y se evaluó el contenido de la grabación de los procedimientos. Añadió que el informe final en torno a dicha investigación se rindió el 26 de febrero de 1993 y que el asunto se archivó por carecer de méritos. En relación con el examen del expediente, la licenciada Marrero de Bauermeister indicó: "**[e]n lo que concierne a la solicitud para examinar el informe de investigación, es menester señalarle que el expediente de toda queja archivada es confidencial, por lo que no está disponible para examen al público en general**". (Énfasis nuestro.) En suma, se les proveyó toda la información solicitada, pero se les negó acceso al expediente investigativo y al informe.

El nombramiento del licenciado Campoamor Redín como juez venció el 30 de junio de 1994 y no fue renominado, por lo tanto, **desde esa fecha cesó en su cargo**. Así las cosas, el 7 de septiembre de 1994, la Sucesión Ortiz presentó una petición de mandamus ante el entonces Tribunal Superior, Sala de San Juan, para que se le ordenara a la licenciada Marrero de Bauermeister producir para inspección y examen el expediente de la investigación administrativa y que se le entregase cualquier documento o comunicación relacionado con la investigación. Adujo como fundamento que el reclamo de confidencialidad del gobierno violaba sus derechos constitucionales fundamentales de libertad de expresión y de acceso a información pública.

El 12 de mayo de 1995, el Tribunal de Primera Instancia dictó una sentencia denegando la expedición del mandamus solicitado. En síntesis, el juzgador razonó que, como la Sucesión Ortiz no presentó la queja que motivó la investigación del licenciado Campoamor Redín en relación con su participación en Pueblo v. Colón Mejías, ésta **no demostró tener interés especial alguno** en conocer el detalle de la investigación realizada por la OAT. Añadió, finalmente, que la disposición de confidencialidad de la Regla 12 de las Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones de Puerto Rico, 131 D.P.R. 630 (1992), según enmendadas el 14 de julio de 1995 y el 5 de marzo de 1999 (en lo sucesivo Reglas de Procedimiento para Acciones Disciplinarias y de Separación), constituye un mecanismo legítimo para proteger a los jueces de quejas inmeritorias.

Insatisfecha con la determinación del foro de instancia, la Sucesión Ortiz presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones, Región Judicial de San Juan (en adelante Tribunal de Circuito). El 8 de noviembre de 1995, el Tribunal de Circuito confirmó la sentencia dictada por el tribunal de instancia. Dicho foro resolvió que la Sucesión **carecía de legitimación activa** para instar el pleito. Basó su determinación en que éstos no demostraron haber sufrido un daño claro, palpable y real al habérseles denegado acceso al expediente. Reiteró, como criterio, que la Sucesión no presentó la queja relacionada con la investigación sobre la participación del Ex Juez Campoamor Redín en el caso criminal Pueblo v. Colón Mejías. Añadió, además, que la presentación de otras quejas contra éste no les concedía legitimación sobre la investigación relacionada con Pueblo v.

Colón Mejías. El Tribunal de Circuito no consideró la constitucionalidad de la Regla 12 porque entendió que no era necesario para la adjudicación de la controversia.

Inconforme, la Sucesión Ortiz presentó ante este Tribunal la petición de certiorari que hoy nos ocupa. En síntesis, arguye que tanto el foro de instancia, como el Tribunal de Circuito erraron al no reconocer a la Sucesión Ortíz "interés alguno" en los documentos que solicita examinar. Además, impugna nuevamente ante nos la constitucionalidad de la Regla 12. Aduce, que ésta establece la confidencialidad total, absoluta y perpetua para los expedientes investigativos de quejas contra jueces cuando el resultado es el archivo. Alegan que dicha regla viola el derecho constitucional de la Sucesión Ortiz de acceso a información pública.[3] Decidimos revisar y expedimos el recurso. Con el beneficio de las comparecencias de las partes, resolvemos.

**III**

En una sociedad que se gobierna a sí misma, resulta imperativo reconocer al ciudadano común "el derecho legal a examinar e investigar como se conducen sus asuntos, sujetos sólo a aquellas limitaciones que impone la más urgente necesidad pública…". Véase Soto v. Srio. de Justicia 112 D.P.R. 477, 485 (1982).

En Puerto Rico, hemos reconocido el derecho de acceso a información pública como un corolario necesario al ejercicio de los derechos de libertad de palabra, prensa y asociación explícitamente consagrados en el Art. II, Sec. 4 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1. El propósito primordial de los derechos reconocidos en la Sec. 4 del Art. II

---

[3] Los señalamientos de error leen como sigue:

1. Erraron el Tribunal Superior, Sala de San Juan y el Tribunal de Circuito de Apelaciones al denegar el recurso de Mandamus y concluir que la parte demandante apelante [Sucesión Ortiz] no tiene interés alguno en el acceso a la información solicitada.

2. Erraron el Tribunal Superior, Sala de San Juan y el Tribunal de Circuito de Apelaciones, al no declarar inconstitucional la Regla 12 de Confidencialidad de las Reglas de Procedimiento para Acciones disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera de Instancia y del Tribunal de

es garantizar la libre discusión de los asuntos de gobierno. Ello conlleva intrínsecamente asegurar y facilitar a todos los ciudadanos de nuestro país el derecho a examinar el contenido de los expedientes, informes y documentos que se recopilan en la gestión de gobierno y que constan en las agencias del Estado. La premisa es sencilla, si el Pueblo no está debidamente informado del modo en que se conduce la gestión pública, se verá coartada su libertad de expresar, por medio del voto o de otra forma, su satisfacción o insatisfacción con las personas, reglas y procesos que le gobiernan.

Por el estrecho vinculo que existe con los derechos a libertad de expresión, asociación y a pedir al gobierno reparación de agravios, **el derecho de acceso a información pública es uno fundamental**. Ello, sin embargo, no significa que el derecho es absoluto e ilimitado. López Vives v. Policía de P.R., 118 D.P.R. 219 (1987). Ahora bien, la clasificación como derecho fundamental impone un análisis de escrutinio **estricto** judicial al evaluar la validez de las barreras levantadas por el Estado como fundamento para denegar un pedido de información.

El derecho de acceso a determinada información en poder del Estado depende, en primer lugar, de si la información solicitada es en realidad información **pública**. Pueblo v. Tribunal, 96 D.P.R. 746, 755 (1986). Son diversas las definiciones que nuestro ordenamiento jurídico ha dado al término "información pública". Según el Art. 1170 del Código Civil: "[s]on documentos públicos los autorizados por un notario o empleado público competente, con las solemnidades requeridas por la ley." 31 L.P.R.A. sec. 3271.

También son públicos aquellos documentos descritos en el Art. 1(b) de la Ley para la Administración de Documentos Públicos de Puerto Rico, 3 L.P.R.A. sec. 1001(b), según enmendada. Allí se define como documento público:

> Todo documento que se origine, conserve, o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de asuntos públicos y que

Apelaciones la cual establece una confidencialidad total, absoluta y perpetua.

de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal.

Una vez un documento cae bajo alguna de estas definiciones, el ciudadano común tiene derecho a solicitar acceso a la información y, como veremos, el Estado sólo podrá negar válidamente el acceso a un ciudadano interesado en un número determinado de supuestos. El aún vigente Art. 409 del Código de Enjuiciamiento Civil, 32 LPRA 1781, establece claramente que, en principio, todo ciudadano, **por el solo hecho de serlo**, tiene el "interés especial" necesario para solicitar examinar documentación pública:

> Todo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley.

En la medida en que todo ciudadano tiene el derecho a inspeccionar cualquier documento público, el acto de denegar el acceso, por sí mismo, causa al solicitante un daño claro, palpable y real. Cuando el Estado injustificadamente impide al ciudadano inspeccionar un récord público, lesiona su derecho fundamental a estar informado. Derecho a su vez inherente y necesario para el ejercicio efectivo de los derechos constitucionales de libertad de expresión, asociación y de pedir al gobierno reparación de agravios. Resulta claro entonces, que el ciudadano que no logra acceso a un documento público por razón de un reclamo de confidencialidad del Estado tiene, cuando menos, legitimación activa para cuestionar la validez del obstáculo que se interpone al ejercicio de sus derechos constitucionales. En consecuencia, erró el Tribunal de Circuito al negarle legitimación activa para incoar el presente pleito.

Aclarado el extremo de la legitimación activa de la Sucesión, nos corresponde evaluar la validez del reclamo de confidencialidad de la OAT en este caso.

IV

Como regla general, el Estado, incluyendo la Rama Judicial, sólo puede reclamar válidamente la secretividad de información pública en un número

limitado de supuestos, a saber, cuando: (1) una ley (o un reglamento) así específicamente lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente conforme a la Regla 32 de Evidencia, 32 L.P.R.A. Ap. IV; o (5) sea información oficial conforme a la Regla 31 de Evidencia, *supra*. Véanse, Angueira v. J.L.B.P,I, res. 11 de enero 2000, 2000 TSPR 2; modificada en Angueira v. J.L.B.P., II, res. el 29 de junio de 2000, 2000 TSPR 103; López Vives v. Policía de P.R., *supra*. Santiago v. Bobb, 117 D.P.R. 153, 159 (1986). El examen judicial al cual deberá someterse cualquier reclamo de confidencialidad de documentos e información pública dependerá de la excepción que invoque el Estado como fundamento *vis à vis* el pedido de información. Véase Angueira v. J.L.B.P.,I, *supra*; modificada en Angueira v. J.L.B.P., II, *supra*.

Cuando el gobierno invoca una ley o reglamento como fundamento para negar al ciudadano el acceso a información pública, la regulación debe satisfacer un escrutinio judicial **estricto**. En concreto, deben cumplirse los siguientes requisitos: (a) caer dentro del poder constitucional del gobierno; (b) propulsar un interés gubernamental apremiante; (c) que tal interés no esté directamente relacionado con la supresión de la libertad de expresión; y (d) que la restricción a la libertad de expresión no sea mayor de lo necesario para propulsar dicho interés. Véase Angueira v. J.L.B.P., I, *supra*; modificada en Angueira v. J.L.B.P., II, *supra*.

Se impone pues un análisis de la validez de la Regla 12 a la luz de los criterios antes expuestos dentro del contexto del procedimiento para acciones disciplinarias de jueces.

V

El procedimiento de disciplina o separación de jueces resulta análogo al proceso seguido en un caso criminal. Al igual que en lo penal, el procedimiento de disciplina se divide en dos fases: una investigativa y una adjudicativa. La primera, la fase

investigativa, puede iniciarla cualquier persona mediante la presentación de una queja o solicitud de separación. También podrá comenzar mediante una solicitud de la Directora de la OAT, o de cualquiera de los Jueces del Tribunal Supremo, a los efectos de que la Oficina de Asuntos Legales de la OAT investigue cualquier asunto relacionado con el desempeño o las actuaciones de un juez. Véase la Regla 7 de las Reglas de Procedimiento para Acciones Disciplinarias y de Separación.

De ordinario, el proceso investigativo culmina con una de dos determinaciones de la Directora de la OAT: (i) remitir el Informe de Investigación del caso a la Comisión de Disciplina para la continuación del procedimiento[4]; o (ii) ordenar el archivo del asunto por éste carecer de méritos o por falta de prueba. En caso de ordenarse el archivo en esta etapa, el quejoso podrá presentar una reconsideración ante la Directora. De confirmarse la decisión de archivar, el promovente podrá acudir en revisión ante el Juez Presidente del Tribunal Supremo.

Una vez remitido el Informe de Investigación a la Comisión, ésta designa a uno de sus comisionados para que haga la determinación de si existe de causa probable. Si se determina la existencia de causa probable, el comisionado designado se inhibe de participar en procedimientos posteriores y la Comisión requerirá de la Oficina de Asuntos Legales de la OAT que presente la querella correspondiente.[5] Presentada ésta en la Secretaría del

---

[4] La Comisión está compuesta por un (1) Presidente y cinco (5) Comisionados Asociados nombrados por el Tribunal. El Presidente y dos (2) de los Comisionados Asociados deben ser ex jueces no postulantes, dos (2) Comisionados Asociados serán abogados no postulantes con, por lo menos, cinco (5) años de experiencia y el comisionado restante será un ciudadano que no sea abogado. Véase la Regla 17 incisos (B)(1) y (B)(3) de las Reglas de Procedimiento para Acciones Disciplinarias y de Separación.

[5] En caso que el Comisionado designado determine que no existe causa probable y recomiende el archivo, el promovente podría presentar una reconsideración a dicho Comisionado. De serle adversa la determinación en reconsideración, tiene derecho a acudir en revisión ante el Juez Presidente del Tribunal Supremo. Véase la Regla 21 de las Reglas de Procedimiento para Acciones Disciplinarias y de Separación.

Resulta importante aclarar además la **diferencia entre los términos queja y querella**. La **queja** es una "[s]olicitud para el inicio de una investigación contra un juez por conducta incompatible con su función

Tribunal Supremo, comienza la segunda parte del proceso ante la Comisión, la fase adjudicativa.

La Regla 12 impugnada por la Sucesión establece la confidencialidad de la primera parte del proceso, la fase de queja e investigación. Al igual que la investigación y sumario de un fiscal, los cuales son secretos y como regla general ni siquiera están sujetos a descubrimiento de prueba,[6] el expediente de la investigación preparado por la Oficina de Asuntos Legales de la OAT es confidencial hasta que se efectúa la determinación de causa probable y se presenta la querella formal.  En otras palabras, **una vez un caso tiene suficiente mérito para llegar a la fase adjudicativa del procedimiento, el expediente investigativo se torna público**.[7]

No obstante, en los casos archivados antes de la presentación de la querella, el expediente permanece confidencial.  Es en relación a este segundo supuesto que la Sucesión impugna la Regla 12.  Esta Regla establece la confidencialidad del proceso de queja y del expediente de investigación en los siguientes términos:

> El proceso investigativo y el expediente de la queja o de la solicitud de separación serán de carácter confidencial.
>
> Efectuada la determinación de causa probable conforme a la Regla 18 y presentada la querella, el expediente estará sujeto a inspección por el público en la Secretaría del Tribunal.
>
> El juez bajo investigación podrá renunciar por escrito, previa solicitud al Tribunal [Supremo], a la confidencialidad en cualquier etapa del procedimiento.  No obstante, a solicitud por escrito de las autoridades pertinentes, la Oficina de Asuntos Legales informará si éste es objeto de investigación por queja o por solicitud de separación presentada en su contra, y la etapa investigativa de la misma.
>
> **No será ofrecida información sobre quejas o solicitudes de separación presentadas contra el juez y que estuvieren en la etapa de evaluación inicial, o que hubieren sido desestimadas en cualquier etapa del procedimiento**. (Énfasis suplido.)

---

judicial."  Mientras que el término **"querella" se refiere al escrito presentado ante la Comisión de Disciplina luego de una determinación de causa probable**.  Véase la Regla 3 de las Reglas de Procedimiento para Acciones Disciplinarias y de Separación.  De hecho, las Reglas utilizan los términos "queja" o "procedimiento de queja" como sinónimo del proceso investigativo.

[6]    Véase la Regla 95(d) de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II R 95(d), sobre el descubrimiento de prueba del Ministerio fiscal en favor del acusado.

[7]    Así lo dispone la misma Regla 12: "Efectuada la determinación de causa probable conforme a la Regla 18 y presentada la querella, el expediente estará sujeto a inspección por el público en la Secretaría del Tribunal."

Examinemos si la Regla 12 cumple con los requisitos necesarios para que podamos sostener su constitucionalidad, a saber: (i) caer dentro nuestro poder constitucional; (ii) adelantar intereses gubernamentales apremiantes no relacionados directamente con la supresión de la libertad de expresión; y (iii) no ser más restrictiva de lo necesario para adelantar dichos intereses.

VI

El Art. V Sec. 11 de nuestra Constitución impone al Tribunal Supremo de Puerto Rico el deber y facultad para disciplinar a los jueces de tribunales inferiores. Al amparo de la facultad cuasi legislativa que nos delega la Constitución aprobamos las Reglas de Procedimiento para Acciones Disciplinarias y de Separación. Se cumple, pues, con el primer requisito para la validez de una norma de confidencialidad. Esto es, la disposición impugnada se encuentra dentro del poder de reglamentación y prerrogativa disciplinaria otorgados constitucionalmente a este Tribunal. Véase la Regla 2 de las Reglas de Procedimiento para Acciones Disciplinarias y de Separación.

En cuanto al balance de intereses que debemos hacer en este caso, encontramos que se contraponen intereses de la más alta jerarquía. Por un lado, reconocemos que el público tiene un derecho constitucional a enterarse de lo pormenores de la administración de la justicia, entre ellos, sobre la conducta de los jueces y de los otros servidores públicos involucrados en el proceso judicial. Por el otro, la Rama Judicial tiene un interés apremiante en mantener la confidencialidad de la fase **investigativa** del proceso disciplinario.

La confidencialidad de los expedientes de casos disciplinarios se establece con el objetivo de proteger tanto a los jueces como a la Rama Judicial del daño resultante de imputaciones **falsas e inmeritorias**. Así lo consagra el comentario a la Regla 12:

> El aspecto de confidencialidad va dirigido a proteger la reputación del juez y de la integridad del sistema judicial frente a quejas o solicitudes de separación infundadas o frívolas, y la dignidad de la función judicial.

Hemos analizado ponderadamente los intereses que se contraponen en el presente caso. Ciertamente, el interés en proteger la reputación de los jueces y la integridad de los tribunales de ataques **viciosos e infundados** resulta de vital importancia para la preservación de la independencia de la Rama Judicial y el buen funcionamiento de sus organismos disciplinarios.[8] Sin

---

[8]    Sobre la importancia de la independencia judicial y el efecto de los ataques infundados sobre ésta, véase: Jeff Jacobson, *Of Judges and Crocodiles: The Case for Judicial Independence*, ABA The Young Lawyer, April 2000

embargo, una vez concluye una investigación dichos intereses se diluyen. **Culminada la fase investigativa del procedimiento disciplinario en una determinación final, sea de causa probable o de archivo, cobra preeminencia el interés de la ciudadanía en fiscalizar el buen funcionamiento de los procedimientos disciplinarios diseñados para asegurar que los jueces sean, en realidad, personas honorables y que desempeñan debidamente sus funciones**.

Al analizar las guías y límites que impone la Regla 12 a la confidencialidad del expediente investigativo, nos vemos forzados a concluir que las restricciones al derecho de acceso a información son mayores de lo necesario. No se justifica que extendamos la confidencialidad de los expedientes investigativos en procedimientos disciplinarios judiciales una vez la fase investigativa ha culminado con una determinación final y firme. Ello, independientemente de que el resultado final de la investigación sea una determinación de archivo de la queja.

En nuestra democracia, el Pueblo tiene derecho a pasar juicio fiscalizador sobre todas las acciones y determinaciones del gobierno, incluyendo las de los tribunales. Debe poderse evaluar la justeza no sólo de aquellos casos en que se encausa disciplinariamente a un juez, sino también de aquellos casos en que se exonera al juez antes de llegar a una determinación de causa probable. Esto es, el ciudadano debe poder examinar los **méritos de la decisión de archivar** una queja. En teoría, una vez termina la investigación de una queja y se toma una decisión final sobre su archivo, la apertura del expediente investigativo e informe solo pueden reivindicar la reputación bajo ataque ya que se demuestra que la queja carecía de mérito.

El respeto a la judicatura no puede ganarse escudando a los jueces de toda crítica. Si el poder de los Tribunales se fundamenta en la altura moral de aquellos que han sido designados para impartir justicia, con mayor razón debe disiparse toda duda sobre la transparencia de los procedimientos diseñados para disciplinarlos. No podemos sino confiar en que el buen juicio

---

at 2. Véase además, Tribunal Supremo Conferencia Judicial, La Independencia Judicial en Puerto Rico, Capítulo IV: Resumen de Conclusiones y Recomendaciones (octubre 1988).

de nuestro Pueblo y el ejercicio responsable de la libertad de prensa distinguirán el grano de la paja al examinar los expedientes disciplinarios de jueces.

Resolvemos pues, que la reputación de los jueces y la integridad de la Rama Judicial, por sí solos, no son suficientes para sostener un reclamo de confidencialidad respecto a expedientes disciplinarios de jueces una vez culmina el proceso investigativo. Pasada esta etapa, prevalece el derecho constitucional del ciudadano de acceso a información pública.[9] Según las Reglas están redactadas al momento, resulta insostenible argumentar que la confidencialidad del expediente disciplinario protege algún otro interés. En consecuencia, tal y como se encuentra redactada, la Regla 12 resulta inconstitucional de su faz.

Al llegar a este resultado, insistimos en mantener la postura liberalizadora en torno al derecho de acceso a información pública que hemos adoptado y ampliado en las últimas dos (2) décadas. Véanse Soto v. Srio de Justicia, 112 D.P.R. 477 (1982); Santiago v. Bobb, 117 D.P.R. 153 (1986); López Vives v. Policía de Puerto Rico, 118 D.P.R. 219 (1987); Torres Ramos v. Policía de Puerto Rico, res. el 30 de junio de 1997, 143 D.P.R. ___ (1997); y Angueira v. J.L.B.P., I, *supra* y Angueira v. J.L.B.P., II, *supra*. Para un tracto histórico completo sobre la evolución del derecho de acceso a información pública en nuestra jurisdicción véanse, además, Prensa Insular

---

[9] Sobre el peso que debe dársele a la protección de la reputación judicial en una balance de intereses dentro del contexto de un reclamo de libertad de expresión véanse, Bridges v. California, 314 U.S. 252 (1941) y Landmark Communications, Inc. v. Virginia, 435 U.S. 829 (1977). A pesar de que dichos casos son distinguibles al de autos –ya que se impugnaban reglas de confidencialidad que prohibían la publicación del contenido del expediente disciplinario y sancionaban penalmente la violación a la prohibición – entendemos que dicha jurisprudencia resulta ilustrativa del peso que merece la protección de la reputación judicial al analizar un reclamo de acceso a información pública.

v. <u>Cordero</u>, 67 D.P.R. 89 (1947) y <u>Dávila</u> v. <u>Superintendente de Elecciones</u>, 82 D.P.R. 264 (1960).

Finalmente aclaramos que el que la Regla 12 haya sido formulada y aprobada por este mismo Tribunal, no la inmuniza de un escrutinio constitucional posterior. Al aprobar la Regla 12 ejercimos una función cuasi legislativa constitucional accesoria distinta e independiente de nuestra función primaria de adjudicar. Esto es, al preparar un reglamento recopilamos información, celebramos vistas públicas, obtenemos sugerencias y críticas a los proyectos propuestos e intentamos diseñar un remedio de aplicabilidad general para atender un tipo particular de situación. Al reglamentar no ejercemos simultáneamente nuestra función primaria de adjudicar controversias dentro de un proceso adversativo donde interpretamos la Constitución y las leyes. Si al pasar juicio sobre una de nuestras reglas dentro de un proceso adversativo ésta resulta contraria a la Constitución, no podemos hacer otra cosa sino invalidarla como haríamos con cualquier otra reglamentación que contraviniese la Constitución.

Por los fundamentos antes expuestos declararíamos la inconstitucionalidad de la Regla 12 de las <u>Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones de Puerto Rico</u>. Sin embargo, no coinciden en el presente caso la conformidad de una mayoría absoluta de la totalidad de los Jueces que componen este Tribunal, según requerido por la Constitución del Estado Libre Asociado de Puerto Rico, Art. V sec. 4 Const. E.L.A., L.P.R.A. Tomo 1, para cualquier decreto de inconstitucionalidad. Por lo tanto, nos limitamos a disponer por esta vía que la referida Regla 12 limite la confidencialidad de los expedientes disciplinarios de jueces a la culminación de la fase investigativa del proceso.

Éste y todos los expedientes disciplinarios judiciales deben estar disponibles al escrutinio público **tan pronto sea final y firme la determinación de la Directora de la O.A.T. de ordenar el archivo o de referir el caso a la Comisión de Disciplina**. Todo ello sin perjuicio de que, aún cuando se torne público el expediente, se proteja mediante orden de protección debidamente fundamentada alguna de la información privilegiada bajo las Reglas de Evidencia que obre en el expediente, o cuando se pueda lesionar derechos fundamentales de terceros o cuando se trastoque indebidamente el derecho a la intimidad del investigado exonerado.

Se revocan, por tanto, las sentencias del Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, y del antiguo Tribunal Superior, Sala de San Juan. En consecuencia se permite a la Sucesión Ortíz el acceso al expediente de la investigación realizada en torno a la intervención del Ex Juez Fernando Campoamor Redín en el caso criminal de Pueblo v. Colón Mejías, Cr. Núm. M-91-53, Tribunal Superior, Sala de Aibonito. El expediente, excluidas aquellas identidades o información que deba proteger este Tribunal, estará disponible para la inspección en la Secretaría del Tribunal Supremo una vez la presente Opinión y Sentencia advenga final y firme.

Se dictará la correspondiente sentencia.


                              Miriam Naveira de Rodón
                                  Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Ligia M. Ortiz Rivera y otro

     Demandantes peticionarios

         v.

Mercedes M. Bauermeister,
Directora Administrativa de los      CC-1996-1
Tribunales

     Demandada recurrida

Fernando Campoamor Redín

     Interventor




SENTENCIA


San Juan, Puerto Rico, 2 de octubre de 2000


     Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se revocan las sentencias del Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, y del antiguo Tribunal Superior, Sala de San Juan.  En consecuencia se permite a la Sucesión Ortíz el acceso al expediente de la investigación realizada en torno a la intervención del Ex Juez Fernando Campoamor Redín en el caso criminal de <u>Pueblo</u> v. <u>Colón Mejías</u>, Cr. Núm. M-91-53, Tribunal Superior, Sala de Aibonito.  El expediente, excluidas aquellas identidades o información que deba proteger este Tribunal, estará disponible para la inspección en la Secretaría del Tribunal Supremo una vez la presente Opinión y Sentencia advenga final y firme.

     Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Corrada del Río disiente con Opinión escrita.  El Juez Presidente señor Andréu García y el Juez Asociado señor Rivera Pérez están inhibidos.  El Juez Asociado señor Rebollo López no interviene.




Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ligia Ortiz Rivera;
Héctor Ortiz Rivera

     Demandantes-Peticionarios

        v.

Mercedes M. Bauermeister
Directora Administrativa         CC-1996-1
de los Tribunales

     Demandada-Recurrida

Fernando Campoamor Redín

     Interventor

Opinión disidente emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

**San Juan, Puerto Rico, a 2 de octubre de 2000.**

**Disiento de la Opinión de la mayoría en este caso por entender que los peticionarios no demostraron que existe un interés público que obre en favor de la divulgación del expediente relacionado con la investigación del ex Juez Fernando Campoamor Redín. En ausencia de tal interés público, los peticionarios carecen de legitimación activa para solicitar dichos documentos. Por lo tanto, no procedía la discusión sobre la constitucionalidad de la Regla 12 de las *Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera***

*Instancia y del Tribunal de Apelaciones de Puerto Rico*, 131 D.P.R. 630 (1992).

I

Es norma jurisprudencial de autolimitación judicial, que no se considerará el aspecto constitucional de una ley cuando pueda resolverse un asunto mediante un análisis estatutario. *P.P.D. v. Administrador General de Elecciones*, 111 D.P.R. 199, 243 (1981); *Pacheco v. Srio. Instrucción Pública*, 108 D.P.R. 592, 601 (1979). Es decir, que cuando existen fundamentos alternos que permitan disponer del caso, es innecesario juzgar la constitucionalidad de alguna ley. *Díaz Aponte v. Comunidad San José, Inc.*, 130 D.P.R. 782 (1992).

Por lo tanto, en el presente caso era innecesario juzgar la constitucionalidad de la Regla 12. Veamos.

II

La legitimación activa es una doctrina de autolimitación y prudencia judicial que existe como corolario del principio de justiciabilidad. *Hernández Torres v. Hernández Colón, et als.*, 131 D.P.R. 593 (1992); *Hernández Torres v. Gobernador*, 129 D.P.R. 824, 835 (1992). Este principio exige que exista un caso y una controversia real para que los tribunales puedan entrar en los méritos del mismo.

La doctrina de *standing* está fundamentada en garantizar al tribunal que el promovente de la acción es uno cuyo interés es de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia. *Hernández Torres v. Hernández Colón*, supra; *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407 (1982). Es por ello que a cada litigante le corresponde probar que tiene legitimación activa para acudir al foro judicial. *Íd.*

En ausencia de una legislación que le conceda legitimación activa, el promovente de la acción judicial tiene que probar: (1) que ha sufrido un daño claro y palpable; (2) que el daño sufrido es real, inmediato y preciso, y no abstracto ni hipotético; (3) un nexo entre el daño sufrido y la causa de acción incoada, y (4) que la causa de acción surge al amparo de la Constitución o de una ley. *Col. De Peritos Elec. V. A.E.E.*, res. el 22 de febrero de 2000, 2000 T.S.P.R. 28, 2000 J.T.S 43; *García Oyola v. J.C.A.*, res. el 21 de febrero de 1997, 142 D.P.R. __ (1997), 97 J.T.S. 25. El interés a ser demostrado por un litigante tiene que ser especial; distinto al interés general que pueda tener cualquier ciudadano en el derecho que se reclame. *Col. Ópticos de P.R. v. Vani Visual Center,* 124 D.P.R. 559 (1989); *Dávila v. Superintendente de Elecciones*, 82 D.P.R. 264 (1960).

No obstante, cuando se trata de reclamaciones en contra de agencias o funcionarios gubernamentales, la doctrina de *standing* se interpreta de forma

amplia y liberal. *García Oyola v. J.C.A.*, supra; *Solís v. Municipio de Caguas*, 120 D.P.R. 53 (1987).

### III

A la luz de lo señalado y aún aplicando liberalmente los requisitos de *standing*, es forzoso concluir que los peticionarios en el presente caso no tienen legitimación activa. Veamos.

Aunque ciertamente se ha reconocido el derecho del público a accesar la información pública, ello no significa que cualquier persona tenga derecho a tal acceso, ya que este derecho, al igual que muchos otros, no es de carácter ilimitado. *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987). Más aún, cuando nos encontramos ante una disposición que imprime carácter de confidencialidad a un documento en específico. Es decir, hemos reconocido que el derecho constitucional a la información bajo el control del Gobierno está sujeto a consideraciones de interés público, que pueden tener preeminencia sobre derechos del individuo. *Rolando Silva v. Panel Sobre el FEI*, 137 D.P.R. 821 (1995).

Como indica la mayoría, solo a manera de excepción, puede el Estado reclamar válidamente la secretividad de información pública en los supuestos allí esbozados. Uno de estos supuestos es que una ley o reglamento así lo declare.

No obstante, somos del criterio de que cuando se reclama la confidencialidad de un documento, no podemos tomar a la ligera una decisión de denegar el acceso u otorgarlo. Sin embargo, sí debe ser requisito apremiante, que la persona que solicita acceso a un documento confidencial, demuestre que existe un interés público que avala la divulgación. Ausente un interés público, el solicitante tendrá que demostrar que posee legitimación activa para que se le permita acceso al documento confidencial.

Así, en *Hale v. U.S. Dpt. of Justice*, 973 F.2d 894 (1992), se dispuso que la persona que solicita la información, debe identificar con especificidad el interés público que promueve la divulgación. Se resolvió, que la fiscalización de una investigación en particular no constituye un interés público **bajo el *Freedom of Information Act*** (FOIA), 5 USCA §552, *et seq.*[10] Este dictamen fue reafirmado en *Neely v. FBI*, 208 F.3d 461 (2000).

La opinión mayoritaria despacha el asunto de la legitimación activa con un fundamento liviano. Aduce que el Art. 409 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1781, establece que una persona, por el mero hecho de ser ciudadano, tiene el interés especial necesario para solicitar examinar documentación pública. No obstante, el mismo articulado dispone que "[t]odo ciudadano tiene

---

[10] Este caso fue revisado por el Tribunal Supremo en *Hale v. Dpt. of Justice*, 509 U.S. 918 (1993), pero sólo a los efectos de modificar las expresiones del

derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por ley". **(Enfasis nuestro).**

En el caso que nos ocupa, el Reglamento dispone que no se ofrecerá información sobre procedimientos investigativos mientras dure la investigación inicial, o sobre procedimientos desestimados en cualquier etapa de los procedimientos. O sea, que el Reglamento expresamente así lo dispone. Por lo tanto, se activa la excepción dispuesta en el Art. 409 del Código de Enjuiciamiento Civil, *supra.*

A tenor, en el presente caso los peticionarios no demostraron cuál es el interés público que obliga a la Oficina de Administración de los Tribunales (OAT) divulgar la investigación del ex Juez Campoamor. Sólo aducen como fundamento un interés en fiscalizar la investigación del ex Juez, lo cual no representa un interés público legítimo que milite en favor de la divulgación de los documentos relacionados con la investigación en controversia. *Neely v. FBI,* supra; *Hale v. U.S. Dpt. of Justice,* supra.

Teniendo en consideración que no existe un interés público que avale la divulgación de la investigación, nos corresponde determinar si los peticionarios tienen legitimación activa para solicitar los documentos de la investigación.

De los autos ante nos, surge que los peticionarios se enteraron de la existencia de la investigación que realizaba la OAT en relación al comportamiento del entonces Juez Superior Hon. Fernando Campoamor Redín dentro de un caso criminal. Sin más, solicitaron examinar la totalidad del expediente de aquella investigación, sin demostrar un interés particular, ni público. Los peticionarios no tenían ningún tipo de relación con el caso criminal investigado; no presentaron queja relacionada con las actuaciones del ex Juez Campoamor en el mismo, ya que ésta fue comenzada *motu proprio* por la OAT.

El hecho de que los peticionarios puedan tener quejas válidas contra el ex Juez en relación con otros asuntos que no tienen nada que ver con el comportamiento del ex Juez Campoamor en el caso criminal, no le concede la legitimación activa que necesitan para reclamar acceso al expediente confidencial de la investigación.

En conclusión, los peticionarios no demostraron que exista un interés público que promueva la divulgación de la investigación. Tampoco demostraron tener un interés particular. Por tales motivos disentimos de la Opinión mayoritaria de este Tribunal. Por el contrario, confirmaríamos el dictamen del Tribunal de Circuito de Apelaciones.

BALTASAR CORRADA DEL RÍO
Juez Asociado

---

tribunal apelativo en cuanto a otros aspectos no relacionados con las anteriores expresiones.