ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| KATHERIN ROMÁN<br><br>Parte Apelado<br><br><br>v.<br><br><br><br>AUTORIDAD DE FINANCIERA Y AGENCIA FISCAL DE PUERTO RICO<br><br>Parte Apelante | TA2026AP00074 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2025CV06070<br><br>Sobre:<br><br>LEY DE TRANSPARENCIA Y PROCEDIMIENTO EDITO PARA ACCESO A LA INFORMACIÓN PUBLICA |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la Juez Aldebol Mora.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 24 de marzo de 2026

Comparece la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico ("AAFAF" o "Apelante") y solicita que revoquemos la Sentencia emitida el 17 de diciembre de 2025[1] por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("foro de instancia" o "foro apelado"). En esa ocasión, el foro de instancia ordenó a la Autoridad a divulgar cierta información relacionada a los empleados de la AAFAF.

Por los fundamentos que exponemos a continuación, *revocamos* la determinación recurrida y *devolvemos* el caso al foro de instancia para la celebración de una vista.

---

[1] Notificada el 18 de diciembre de 2025.

-I-

A continuación, detallamos los hechos pertinentes a la controversia de epígrafe.

El 17 de noviembre de 2025, Katherin Román ("Sra. Román" o "Apelada") presentó un *Recurso Especial de Acceso a Información Pública*[2]. Mediante dicho recurso alegó haber cursado varios requerimientos de información entre los meses de septiembre y octubre de 2025.

El 15 de diciembre de 2025, la AAFAF presentó una *Moción de Desestimación del "Recurso Especial de Acceso a Información Pública"*[3]. En esa ocasión, la Apelante hizo referencia a los cuatro (4) requerimientos cursados por la Sra. Román. En el <u>primer y cuarto requerimiento</u>, la Sra. Román solicitó el nombre, apellidos, puestos y salarios de los empleados de confianza. En esa ocasión, la Apelante indicó que la información solicitada no constituye información pública, en la medida en que la Apelada "*pretende que se divulgue información que permite identificar individualmente a empleados de la AAFAF, asociando sus nombres con salarios específicos y datos de contacto directo*"[4]. Además, la Apelante indicó que en la información solicitada existen riesgos reales de seguridad personal, financiera e institucional debido a que la exposición a dicha información personal facilita escenarios de hostigamiento, fraude financiero, robo de identidad, entre otros. Finalmente, la AAFAF señaló que el balance de intereses favorece la protección de la confidencialidad. Lo anterior debido a que "*la información relevante sobre la gestión pública de la*

---

[2] Véase Entrada #1 del expediente de Primera Instancia en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] Véase Entrada #8 del expediente de Primera Instancia en SUMAC.
[4] *Íd.*, pág. 5.

*AAFAF, incluyendo su estructura organizacional y el uso de fondos públicos, ya ha sido divulgada conforme a ley*"[5]. El 30 de septiembre de 2025, la Sra. Román presentó el segundo requerimiento mediante el cual solicitó los gastos por servicios profesionales para los años 2019 al 2025. Respecto a dicho requerimiento, la AAFAF alegó que es académico por tratarse de información que fue producida. Finalmente, el 2 de octubre de 2025, la Sra. Román presentó un tercer requerimiento solicitando el nombre y apellido de los empleados, teléfono y extensión, correo electrónico, ubicación de la oficina, región que pertenece y servicios que ofrece. En esa ocasión, la Apelante afirmó que la Sra. Román solicitó información amplia e indiscriminada. En esta ocasión, la Apelante señaló haber provisto la información necesaria y pertinente para identificar las funciones institucionales de su personal, incluyendo las clasificaciones de cada puesto, la ubicación general de los empleados en el Centro Gubernamental Minillas, y los canales oficiales de comunicación de la AAFAF[6].

Así las cosas, el 17 de diciembre de 2025, el foro de instancia emitió una *Sentencia*[7] ordenando a la AAFAF a producir lo siguiente:

1. Nombres, apellidos, puestos y salarios de los empleados de confianza.
2. Nombres, y apellidos de empleados, teléfono y extensión, correo electrónico, ubicación de la oficina, región que pertenece y servicios que ofrece.

---

[5] *Íd.*, pág. 11.
[6] *Íd.*, pág. 14.
[7] Véase Entrada #9 del expediente de Primera Instancia en SUMAC.

Inconforme con dicha determinación, el 20 de enero de 2026, la AAFAF presentó un recurso de apelación en el que hizo los siguientes señalamientos de error:

**PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA MOCIÓN DE DESESTIMACIÓN DE LA AUTORIDAD EN CUANTO ORDENÓ LA DIVULGACIÓN DE NOMBRES Y APELLIDOS ASOCIADOS A PUESTOS Y SALARIOS DE EMPLEADOS DE CONFIANZA.**

**SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA MOCIÓN DE DESESTIMACIÓN DE LA AUTORIDAD EN CUANTO A LA DIVULGACIÓN DE INFORMACIÓN DE CONTACTO DIRECTO DE EMPLEADOS.**

**TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA MOCIÓN DE DESESTIMACIÓN DE LA AUTORIDAD EN CUANTO A LA DIVULGACIÓN DE INFORMACIÓN QUE NO ESTÉ DOCUMENTADA.**

**CUARTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA SIN CONTAR CON UNA ALEGACIÓN RESPONSIVA, CUANDO NO SE HABÍA PASADO PRUEBA, NI CELEBRADO VISTA.**

Respecto a la parte apelada, cabe señalar que esta no compareció ante este Tribunal.

-II-

**A. Derecho de acceso a la información pública**

En nuestra jurisdicción la norma es que los ciudadanos tienen un derecho de acceso a información pública. Este derecho, según ha reconocido el Tribunal Supremo de Puerto Rico, es un corolario necesario de los derechos de libertad de expresión, prensa y asociación establecidos en la Sección 4 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico[8]. El propósito primordial que persigue el reconocimiento de estos derechos es garantizar la libre discusión de los asuntos del gobierno y con ello, "*asegurar y facilitar a todos los ciudadanos el derecho a examinar*

---

[8] *Nieves v. Junta*, 160 DPR 97, 102 (2003).

*el contenido de los expedientes, informes y documentos que se recopilan en la gestión del gobierno y que constan en las agencias del Estado*"[9]. En armonía con ello, nuestro más alto foro ha expuesto lo siguiente: "*[e]n una sociedad que se gobierna a sí misma, resulta imperativo reconocer al ciudadano común "el derecho legal a examinar e investigar como [sic] se conducen sus asuntos, sujetos sólo a aquellas limitaciones que impone la más urgente necesidad pública*"[10].

De igual forma, el artículo 409 del Código de Enjuiciamiento Civil dispone, en lo pertinente, que "*[t]odo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley*"[11]. Sin embargo, todo lo aquí dispuesto no significa que el derecho es absoluto e ilimitado. El ejercicio de este derecho depende de que la información solicitada sea propiamente pública[12].

Nuestro ordenamiento jurídico ha definido el término de "información pública". Según el Art. 279 del Código Civil: "*[e]s un instrumento público el que autoriza un notario o un funcionario público competente en el ejercicio de su función, con las formalidades que requiere la ley* […]"[13].

Una vez el documento es catalogado como público, cualquier ciudadano puede solicitar su inspección[14]. En virtud de ello, "*[e]n la medida en que todo ciudadano tiene el derecho a inspeccionar cualquier documento*

---

[9] *Ortiz v. Dir. Adm. De Los Tribunales*, 152 DPR 161, 175 (2000).
[10] *Íd.*, pág. 175.
[11] 32 LPRA § 1781.
[12] *Nieves v. Junta, supra,* pág. 102.
[13] 31 LPRA § 6171.
[14] *Nieves v. Junta, supra*, pág. 103; *Ortiz v. Dir. Adm. De Los Tribunales, supra*, pág. 176.

*público, el acto de denegar el acceso, por sí mismo, causa al solicitante un daño claro, palpable y real*"[15], ya que tal impedimento lesiona el derecho inherente del ciudadano a estar informado. El Estado sólo podrá negar válidamente el acceso a determinado documento público en un marco circunstancial delimitado[16]. En estas circunstancias, el peso de la prueba para justificar cualquier reclamo de confidencialidad corresponde al Estado[17].

Nuestro ordenamiento jurídico ha reconocido que el derecho a la información pública no es absoluto ni ilimitado, y está sujeto a aquellas limitaciones que, por necesidad imperiosa el Estado imponga[18]. Así, se ha reconocido que un reclamo de confidencialidad por parte del Estado puede prosperar sólo cuando: (1) una ley o un reglamento así específicamente lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente conforme a la Regla 515 de Evidencia[19]; o (5) es información oficial bajo la Regla 514 de Evidencia[20]. El examen judicial al cual deberá someterse cualquier reclamo de confidencialidad de documentos e información pública dependerá de la

---

[15] *Ortiz v. Dir. Adm. De Los Tribunales*, *supra*, pág. 177.
[16] *Colón Cabrera v. Caribbean Petroleum*, 170 DPR 582, 591 (2007); *Nieves v. Junta, supra*, pág. 103.
[17] *E.L.A. v. Casta*, 162 DPR 1, 12 (2004).
[18] *Ortiz v. Dir. Adm. De los Tribunales*, 152 DPR 161, 175 (2000).
[19] 32 LPRA Ap. VI, R. 515.
[20] 32 LPRA Ap. VI, R. 514; *Colón Cabrera v. Caribbean Petroleum, supra*, pág. 591; *Nieves v. Junta, supra*, pág. 103; *Ortiz v. Dir. Adm. De Los Tribunales, supra*, pág. 177; *Angueira v. J.L.B.P.*, 150 DPR 10, 24 (2000).

excepción que invoque el Estado como fundamento *vis-a-vis* el pedido de información[21].

Cuando el gobierno invoca una ley o reglamento como fundamento para negar al ciudadano el acceso a información pública, la regulación debe satisfacer un escrutinio judicial estricto. Por tanto, será necesario evaluar las barreras levantadas por el estado como fundamento para denegar un pedido de información bajo los siguientes requisitos: (a) si la restricción cae dentro del poder constitucional del gobierno; (b) si propulsa un interés gubernamental apremiante; (c) que el interés no esté directamente relacionado con la supresión de la libertad de expresión; y (d) que la restricción a la libertad de expresión no sea mayor de lo necesario para propulsar dicho interés[22]. En otras palabras, el tribunal deberá hacer un balance de intereses a base de un análisis de la totalidad de las circunstancias para determinar si el reclamo del Estado responde a la existencia de intereses apremiantes de mayor jerarquía que los valores protegidos por el derecho ciudadano a la información[23]. Ese balance se realizará de forma estricta a favor del reclamante de la solicitud y en contra del privilegio gubernamental[24].

## B. Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública

En vista de la consistente jurisprudencia que reconocía el derecho de las personas al acceso de la información pública, fue aprobada la Ley Núm. 141 de 1 de agosto de 2019, según enmendada, conocida como *Ley de Transparencia y Procedimiento Expedito para el Acceso a*

---

[21] *Ortiz v. Dir. Adm. De Los Tribunales, supra*, pág. 178.
[22] *Angueira v. J.L.B.P., supra*, págs. 24-25.
[23] *Íd.*, págs. 25-26; *Noriega v. Gobernador*, 130 DPR 919, 938 (1992).
[24] *López Vives v. Policía de P.R.,* 118 DPR 219 (1987).

*la Información Pública* ("Ley 141-2019"). Como lo indica su título, esta ley fue promulgada por la Asamblea Legislativa a los fines de promover el acceso a la información pública mediante mecanismos procesales ágiles y económicos que propicien la transparencia[25]. Surge de la Exposición de Motivos, además, que:

> [e]s importante que entre el gobierno y la ciudadanía exista un ambiente de respeto, transparencia y comunicación afectiva. Mantener el orden es importante y la transparencia de un gobierno aún más; la ciudadanía tiene el derecho de saber cómo se manejan los fondos públicos y cómo se toman las decisiones que afectarán el futuro de Puerto Rico y sus habitantes.

A esos efectos, el Artículo 3 de la Ley 141-2019 establece una política de apertura a la información y documentación, que incluya la disponibilidad de la tecnología y de los avances necesarios para hacer valer el derecho de los ciudadanos a la información y documentación pública oportunamente de forma accesible[26]. Por su parte, la referida legislación dispone que, salvo circunstancias extraordinarias específicamente fundamentadas, no se le requerirá a ningún ciudadano la contratación de un abogado para poder radicar el recurso y no se le podrá impedir tramitar su caso por derecho propio[27].

A los fines de viabilizar un reclamo de acceso a la información pública cuando este haya sido negado por alguna entidad gubernamental, el Art. 9 de la mencionada legislación permite a los ciudadanos presentar un *Recurso Especial de Acceso a Información Pública*. En específico, el referido artículo dispone:

> Cualquier persona a la cual una entidad gubernamental le haya notificado su

---

[25] Véase Exposición de Motivos de la Ley 141-2019, según enmendada.
[26] Véase Art. 3 de la Ley 141-2019, según enmendada.
[27] Véase Art. 9 de la Ley 141-2019, según enmendada.

determinación de no entregar la información solicitada o que no haya hecho entrega de la información dentro del término establecido o su prórroga, tendrá derecho a presentar, por derecho propio o a través de su representación legal, ante la sala del Tribunal de Primera Instancia de la Región Judicial de San Juan un Recurso Especial de Acceso a Información Pública.

## C. Ley de Datos Abiertos del Gobierno de Puerto Rico

En el 2019 se aprobó la Ley Núm. 122 de 1 de agosto de 2019, también conocida como *Ley de Datos Abiertos del Gobierno de Puerto Rico*[28]. Esta legislación se aprobó con el propósito de incorporar tendencias innovadoras en el manejo de datos para el beneficio de los ciudadanos. Así, en su Artículo 4, se decretó como política pública del Gobierno lo siguiente:

[S]e establece como Política Pública del Gobierno de Puerto Rico que el manejo efectivo de datos gubernamentales es esencial para apoyar los procesos de innovación de todos los sectores en Puerto Rico, el facilitar una cultura de mejoramiento continuo y de rendición de cuentas en el organismo gubernamental, el desarrollo y crecimiento económico sostenible, y el generar resultados tangibles, de valor y de impacto a nuestros ciudadanos[29].

Por su parte, la referida legislación dispone que todo reclamo de confidencialidad que haga cualquier Organismo Gubernamental para proteger o evitar la divulgación de un dato deberá realizarse conforme los siguientes criterios:

a. que una ley así lo disponga;
b. que el dato está protegido por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos;
c. que revelar el dato puede lesionar derechos fundamentales de terceros;
d. que se trate de la identidad de un confidente; o
e. que sea "información oficial" conforme a la Regla 514 de las Reglas de Evidencia de Puerto Rico.

---

[28] Ley Núm. 122-2019, 3 LPRA § 9891 et seq.
[29] 3 LPRA § 9894.

Del mismo modo, esta legislación incorpora excepciones adicionales a la hora de divulgar datos públicos, las cuales se enumeran a continuación:

i. Toda información y/o documentación que sea clasificada como de seguridad nacional;

ii. Reglas o prácticas de personal internas de un Organismo Gubernamental;

iii. Comunicaciones internas entre dependencias;

iv. Información pública que aplique alguno de los privilegios reconocidos en la Constitución de los Estados Unidos o de Puerto Rico, leyes y Reglas de Evidencia, incluyendo la Información Oficial e Información Oficial-Decisional en Procedimientos Deliberativos sobre Política Pública, según reconocido por la jurisprudencia;

v. Información asociada a litigios civiles o criminales en los que un Organismo Gubernamental sea parte o empleado o funcionario público que por razón de su empleo sea parte, siempre que el litigio esté pendiente a la fecha de la solicitud o se encuentren en el proceso de investigación;

vi. Información que si fuera divulgada podría invadir la privacidad de un tercero o lesionar sus derechos fundamentales;

vii. Información sobre confidentes o encubiertos; investigaciones y/o procesamiento que incida en que a un ciudadano se le prive de un juicio justo e imparcial, o información que ponga en peligro la seguridad física de cualquier Persona;

viii. Sumario del ministerio público, el cual es privilegiado, o el (work product) que obre en el expediente investigativo, o que contenga información y/o documentación relacionada a una investigación en curso;

ix. Información sobre secretos de negocios obtenidos por una Persona, que es confidencial por contrato, estatuto o decisión judicial;

x. Información comercial o financiera para la que se demuestre que la divulgación causaría un daño competitivo sustancial a la persona de la que se obtuvo la información;

xi. Todo tipo de información relacionada a la dirección física, número de teléfono,

información de contacto de emergencia, número de seguro social, número de tarjeta de crédito, información contributiva y/o financiera, actividad bancaria, información confidencial de terceros privados, secretos de negocio, planillas contributivas, débito o número de acceso que sea recopilada o mantenida por el Organismo Gubernamental; e

xii. Información relacionada con la seguridad de la red informática o con su diseño, operación o defensa de dicha red informática.[30]

-III-

En el presente recurso, la Sra. Román le cursó cuatro requerimientos de información a la AAFAF. En ellos, solicitó diversa información como nombres, apellidos, puestos y salarios de los empleados de confianza. Además, solicitó el número de teléfono, extensión, correo electrónico, ubicación de oficina, región en la que trabaja y el servicio que ofrece cada uno de estos empleados. Cabe señalar que también solicitó los gastos por servicios profesionales desde el año 2019 hasta el presente.

Ante tales requerimientos, la AAFAF presentó un recurso de apelación en el que solicitó que se desestime el recurso presentado por la Sra. Román o, en su alternativa, se devuelva el caso al foro de instancia para la celebración de una vista donde la Apelada pueda demostrar que proceden sus requerimientos. A continuación, discutimos, de manera conjunta, los señalamientos de error planteados por la AAFAF.

Según expusimos en el acápite II, en nuestro ordenamiento jurídico el derecho a la información pública no es absoluto. En el caso de epígrafe, la AAFAF proveyó la información solicitada en el segundo requerimiento, a saber, los gastos por servicios

---

[30] *Íd.*

profesionales para los años 2019 al 2025. Además, referente a la solicitud de producir los puestos de los empleados junto con el salario, la Apelante afirma que tal información se encuentra disponible en su página de internet. Ahora bien, respecto al resto de los requerimientos, la AAFAF plantea que la información solicitada infringe el derecho a la intimidad y crea un riesgo de seguridad para los empleados sobre los cuales se hace la solicitud. Como parte de sus planteamientos, la AAFAF sostiene que divulgar el nombre del empleado junto con otra información personal no adelanta ningún fin público, sino que lo expone a intentos de presión indebida que, a su vez, afecta la integridad de la gestión pública que realiza.

Ante tales planteamientos, la información solicitada no debe ser provista de manera automática o mecánica. Por el contrario, le corresponde al foro sentenciador realizar un balance de intereses donde evalúe el requisito sobre la información solicitada *vis-a-vis* los fundamentos planteados por la AAFAF. Es decir, el foro de instancia debe llevar a cabo un análisis de la totalidad de las circunstancias para determinar si el reclamo de la aquí Apelante responde a intereses apremiantes de mayor jerarquía que los valores protegidos por el derecho que ostenta la Sra. Román de acceso a información pública.

A tenor con lo anterior, concluimos que, la orden de producir la información en controversia no debió haber ocurrido sin la previa celebración de una vista, donde el tribunal evaluara la totalidad de las circunstancias. Siendo así, revocamos la Sentencia apelada y devolvemos

el caso al foro de instancia para la celebración de una vista conforme a lo aquí expresado.

-IV-

Por los fundamentos que anteceden, **_revocamos_** la determinación apelada y **_devolvemos_** el caso al foro de instancia para la celebración de vista con el propósito de evaluar los planteamientos de las partes.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones