ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| EL PUENTE DE WILLIAMSBURG, INC.<br><br>Apelante<br><br>v.<br><br>DEPARTAMENTO DE EDUCACIÓN<br><br>Apelado | KLAN202400903 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2024CV07132<br><br>Sobre:<br>Ley de Transparencia y Procedimiento Expedito para Acceso a la Información Pública (Ley Núm. 141-2019) |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 18 de noviembre de 2024.

El 7 de octubre de 2024, El Puente de Williamsburg, Inc. (El Puente o Peticionario) presentó un recurso de apelación para que revoquemos la *Sentencia* dictada y notificada el 9 de septiembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante esta *Sentencia*, el foro de instancia declaró *Ha Lugar* la Solicitud de Desestimación que presentó el Departamento de Educación de Puerto Rico (Departamento o Recurrido).

En principio, cuando el Foro Primario dilucida las controversias de solicitudes de producción de información pública, debe disponer del asunto vía Resolución y no por sentencia[1].

---

[1] Cuando el Tribunal resuelva por escrito la controversia sobre la solicitud de producción de información pública, debe emitir una **Resolución** fundamentada en derecho Ver Artículo 9 de la Ley 141-2019, infra. 3 LPRA sec. 9919. Las Resoluciones emitidas por el Tribunal de Primera Instancia son revisables ante nuestro foro mediante el recurso de *certiorari*. Véase Regla 32 (d) del Reglamento del Tribunal de Apelaciones. 4 LPRA Ap. XXII-B, R. 32 (d).

Número Identificador
SEN2024 _____

Vista la naturaleza de este recurso, se acoge como *certiorari* manteniendo el alfanumérico que asignó la Secretaría de este Tribunal.

Luego de examinar el recurso presentado y su oposición, se expide el auto de *certiorari* y se confirma la "Sentencia" recurrida.

**I.**

El 14 de febrero de 2024, El Puente le cursó una carta a varios funcionarios del Departamento de Educación. Allí solicitó que le entregaran lo siguiente:

> "**todos los récords y documentos en los que se hayan recogido o documentado las cancelaciones de clases** por razones de 1) emergencias, 2) eventos atmosféricos y 3) falta de luz o agua, para cada escuela del archipiélago desde el año 2015 hasta el presente. Bajo el concepto de emergencias entiéndase eventos como, la pandemia del Covid-19, situaciones o riesgos de salud y terremotos, que hayan dado paso a la cancelación de clases en al menos una escuela. Por eventos atmosféricos entiéndase, calor, huracanes/tormentas, inundaciones, polvo del Sahara, sequía y alguno otro que haya dado paso a la cancelación de clases en al menos una escuela."

En la misiva, requirió que le entregaran la información dentro de diez (10) días laborables, vencedero el 28 de febrero de 2024.

Ante la falta de contestación, el Peticionario le comunicó al Departamento que le otorgaría una extensión de diez (10) días adicionales, antes de acudir al Tribunal de Primera Instancia.

El 5 de marzo de 2024, el Departamento envió al Peticionario una serie de documentos mediante correo electrónico. Estos incluían material sobre las directrices generales y activaciones de protocolos ante el paso de tormentas, enmiendas al calendario, y el calendario deportivo interescolar.

Posteriormente, el 13 de marzo de 2024, el Departamento envió una carta titulada *Repuesta Petición de Información al*

*amparo de la Ley Núm. 141-2019*, en la que afirmaba que los documentos anejados respondían a la petición de información. Además, el 14 de marzo de 2024, el Departamento envió una tabla con varios de los documentos previamente compartidos y agregó múltiples memos y cartas.

Según el Peticionario, algunos de los documentos que recibió detallaban la información solicitada, mientras que otros utilizaban un lenguaje impreciso.

Por entender que no recibió la información solicitada, el 24 de junio de 2024, el Peticionario cursó una segunda carta solicitando la información al Departamento. En esta indicó que la información provista había sido insuficiente y no cumplía con lo solicitado. En específico, arguyó que muchos de los documentos compartidos no especificaban la información solicitada sobre la cantidad de días de clase perdidos a consecuencia de emergencias, eventos atmosféricos, o falta de luz o agua. El 5 de julio de 2024, el Peticionario volvió a enviar un correo electrónico reiterando la petición de información al Departamento. Por su parte, el Departamento sostuvo que la información solicitada se había enviado desde el mes de marzo del presente año.

Así las cosas, el 31 de julio de 2024, el Peticionario presentó un *Recurso Especial de Acceso a Información*. En este, le solicitó al Tribunal de Instancia que le ordenara al Departamento entregar todos los récords y documentos sobre cancelaciones de clases por razones de emergencias, eventos atmosféricos y falta de luz o agua, desde el año 2015 hasta el presente. Además, solicitó que, de no tener la información solicitada, se le ordenara al Departamento a emitir una resolución negativa y que le explicara la razón por la cual no tenía esa información recopilada. También pidió que le ordenara al Departamento a proceder con la

divulgación prospectiva de la información cuando le fuese solicitada, y que le impusiera el pago de costas y gastos de litigio.

El 23 de agosto de 2024, el Departamento presentó una *Solicitud de Desestimación a Recurso Especial de Acceso a Información Pública*. En esta, le solicitó a la Sala de Instancia que declarara *No Ha Lugar* el *Recurso Especial* porque no existía información pública adicional a la que ya había se le había compartido al Peticionario. En específico, arguyó que el Departamento realizó una búsqueda exhaustiva en sus archivos y compartió en tres (3) ocasiones la información solicitada, de la manera en que se custodiaba y almacenaba en la agencia. Además, reiteró que la agencia no compilaba la información de la cancelación de clases por falta de agua y luz, de la manera en que se estaba solicitando. Junto al escrito incluyó una Certificación emitida por la Dra. Lydiana I. López Díaz, Secretaria Auxiliar de Planificación y Rendimiento (SAPRe) del Departamento de Educación de Puerto Rico (DEPR). En la *Certificación*, la Dra. López Díaz expresó lo siguiente:

> [S]oy la persona encargada de dirigir la Secretaría la cual se compone de 5 unidades, a saber: Medición y *Assessment*, Gobernanza de Datos, Planificación y Optimización, Calidad y Manejo de Datos y Centro de Investigaciones e Innovaciones Educativas. Las funciones principales de SAPRe son generar los informes de cumplimiento federal y estatal relacionado a lo académico, no a la parte fiscal. De igual forma, mantener un expediente físico de las escuelas activas e inactivas y autorizar los estudios e investigaciones que se realizan en cualquier área del DEPR.
>
> Por la presente Certifico que:
>
> Ante la solicitud de información realizada por El Puente en la cual requería al DEPR entregar todos los récords y documentos en los que se hayan recogido o documentado las cancelaciones de clases por razones de emergencias, eventos atmosféricos y falta de luz o agua, desde el año 2015 hasta el presente, la SAPRe se dio a la tarea de investigar y recopilar la información disponible en nuestros récords y otros medios. La información encontrada se obtuvo principalmente de las comunicaciones oficiales

emitidas por DEPR, como por ejemplo, comunicados de prensa y memorandos de la agencia. De igual forma, se utilizaron documentos internos de la SAPRe, como por ejemplo, el compendio de COVID-19, para complementar la información. Por último, se realizaron búsquedas a través de la Internet para hacer referencia a artículos publicados en diferentes periódicos digitales. La información provista es el resultado de la investigación completada y la misma se resume en el Excel titulado Fechas de suspensión de clases eventos atmosféricos. La SAPRe no consta con información adicional a la compartida. Y para que así conste firmo la presente certificación en San Juan, Puerto Rico a 22 de agosto de 2024.[2]

El Departamento sostuvo también que entregó la información que tenía disponible. Igualmente produjo un resumen de la información que recopiló para intentar satisfacer los requerimientos del Peticionario. En particular, indicó que suplió la siguiente información:

1. 5 de marzo de 2024:

a. Comunicado del 17 de septiembre de 2017 "Departamento de Educación activa protocolo antes del paso del Huracán María".

b. Comunicado del 5 de abril de 2018 sobre Enmiendas al calendario interescolar segundo semestre 2017-2018. (Deportes)

c. Comunicado del 23 de septiembre de 2019 – Directrices generales ante el paso de la Tormenta Tropical Karen.

d. Comunicado del 4 de noviembre de 2019 - Enmienda al calendario escolar 2019-2020 e inicio de matrícula en línea para el año escolar 2020-2021.

2. 13 de marzo de 2024:

a. Carta con fecha del 13 de marzo de 2024 junto con los anejos compartidos el día 5 de marzo.

3. 14 de marzo de 2024:

a. Comunicado del 1 de febrero de 2020 - Plan de reinicio escolar para el tercer grupo de escuelas identificadas como aptas.

b. Comunicado del 20 de enero de 2020 - Enmienda: recopilación de la asistencia del personal escolar y estudiantes; Inicio del segundo semestre escolar 2019-2020.

---

[2] Apéndice pág. 217.

c. Comunicado del 29 de mayo de 2018 - Solicitud de verificación de escuelas que hayan terminado el semestre previo a la fecha oficial establecida en el calendario escolar.

d. Comunicado del 10 de agosto de 2021 - Tiempo concedido a los empleados públicos por el paso de un fenómeno atmosférico por Puerto Rico.

e. Comunicado del 1 de febrero de 2020 - Plan de reinicio escolar para el tercer grupo de escuelas identificadas como aptas.

f. Comunicado del 20 de diciembre de 2020 - Recopilación de la asistencia del personal escolar y estudiantes; Inicio del segundo semestre escolar 2019-2020.

g. Comunicado del 15 de septiembre de 2022 – Preparativos ante el aviso del paso del fenómeno atmosférico Fiona por Puerto Rico.

h. Comunicado del 8 de abril de 2021 - Ofrecimiento de clases a distancia para todo el sistema educativo.

i. Tabla en formato Excel, titulada "Fechas de suspensión de clases Eventos Atmosféricos".

j. Memorando Especial Nm. 23-1029 "Tiempo concedido a los empleados públicos tras el paso del fenómeno atmosférico Dorian por Puerto Rico".

k. Compendio o trayectoria en el DEPR sobre el COVID-19 Años Escolares 2019-2020 / 2020-2021 / 2021-2022.

l. Documento en formato *pdf* de la tabla "Fechas Suspensión de Clases Eventos Atmosféricos 2015 al 2024".

m. Memorando del 19 de marzo de 2021 "Cumplimiento con las iniciativas relacionadas con la reapertura de los planteles escolares y la recopilación de información y de datos".

n. Comunicado del 8 de enero de 2022 "Enmienda al calendario escolar 2021-2022 ante la situación del covid-19 en Puerto Rico (enmendado)"

o. Comunicado del 31 de octubre de 2022 "Enmienda al calendario escolar 2022-2023 para cumplir con el tiempo lectivo luego del paso del Huracán Fiona".

p. Comunicado del 1 de septiembre de 2023 "Medidas para afrontar la ola de calor en las escuelas". Véase Anejo 3.

El Departamento planteó que al entregar toda la información que tenía disponible sobre la suspensión de clases, no existía remedio alguno que el Tribunal pudiera proveer.

El 6 de septiembre de 2024, El Puente presentó una *Moción en Cumplimiento de Orden y en Oposición a Solicitudes de Desestimación*. En general, alegó que el Departamento de Educación debía producir la información sobre los días lectivos que se hayan perdido, cancelado o repuesto. Sostuvo que el asunto de los días lectivos había sido recogido por los medios noticiosos, en informes y artículos. En particular, aludió al documento de "*Mitigation Assesment Team Report Hurricanes Irma and María in Puerto Rico Performance of Schools and Shelters*" preparado por FEMA en el que se señaló en parte lo siguiente:

> "By mid-October, 98 schools had reopened, or roughly 9 percent (Álvarez 2017), but it was not until early December that 1,075, or more than 90 percent, of the schools reopened."[3]

Expresó que la información que proveyó el Departamento no permite conocer cómo se ven afectadas las escuelas en su totalidad, regionalmente y de manera individual. Por tanto, no se atendió su solicitud por región y por escuela. Indicó que la tabla que proveyó el Departamento, en el encasillado del año escolar 2017-2018 menciona una nota sobre la suspensión de clases tras el paso del Huracán Irma. Pero, señaló que no se menciona el asunto de retomar las clases ni el paso del Huracán María, lo cual provocó la suspensión de clases por más de dos meses. Sostuvo que esa información debería ser de fácil comprobación. En la alternativa indicó que el Departamento debía suplir una declaración jurada de no tener la información solicitada.

---

[3] Apéndice pág. 239.

Evaluado el asunto, el 9 de septiembre de 2024, el tribunal de instancia emitió y notificó una *Sentencia*. Resolvió que el *Recurso Especial* no procedía, ya que el Departamento había divulgado toda la información que obraba en su poder. A su vez, sostuvo que la agencia no tenía la obligación de entregar o divulgar documentos que, como parte de sus funciones, no genere.[4]

Aun en desacuerdo, el 7 de octubre de 2024, el Peticionario interpuso el presente recurso. En este arguyó que incidió el Tribunal de Primera Instancia al:

> Desestimar el Recurso Especial de Acceso a Información por Academicidad y concluir que el Departamento de Educación no tiene la obligación de producir la información solicitada.

El Departmento presentó su Alegato. Con el beneficio de los escritos de ambas partes, procedemos a resolver.

## II.

### A. Derecho al Acceso de Información y Documentos Públicos

Como pilar de toda sociedad democrática, la ciudadanía de Puerto Rico posee un derecho fundamental al acceso a la información pública, el cual está estrechamente vinculado con los derechos a la libertad de palabra, prensa y asociación. Art. II, Sec. 4, Const. ELA, LPRA, Tomo 1; Kilómetro 0 v. Pesquera López et al., 207 DPR 200, 207 (2021); Trans Ad de P.R. v. Junta de Subastas, 174 DPR 56, 67 (2008); Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161, 175 (2000). Este derecho garantiza que toda persona pueda examinar el contenido de los expedientes, informes y documentos que hayan sido recopilados por el Estado durante sus gestiones gubernamentales. Kilómetro 0 v. Pesquera

---

[4] Apéndice págs. 244-255.

López  et al*., supra;* Engeneering Services v. AEE, 205 DPR 136, 145 (2020); Ortiz v. Dir. Adm. de los Tribunales, *supra*.

Cónsono a dicho mandato constitucional, el Artículo 409 del Código de Enjuiciamiento Civil dispone, en lo pertinente, que "[t]odo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley." 32 LPRA sec. 1781.

De este modo, el derecho de acceso a la información pública promueve y facilita la transparencia gubernamental. Ahora bien, el derecho de acceso a la información pública se activa una vez la información solicitada por una persona es, en efecto, pública. Engeneering Services v. AEE*, supra,* pág. 147.

A esos fines, el Artículo 3(b) de la Ley de Administración de Documentos Públicos de Puerto Rico, Ley Núm. 5 de 8 de diciembre de 1955, según enmendada, provee que se considerará documento público lo siguiente: "Todo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de acuerdo con lo dispuesto en el Artículo 4 de esta Ley […] se haga conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal.  Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos." 3 LPRA sec. 1001(b).

Es decir, "un documento público es el que un organismo estatal recibe en el curso de sus procedimientos y que está obligado a preservar". Kilómetro 0 v. Pesquera López et al*., supra* pág. 209; Trans Ad de PR v. Junta de Subastas, *supra*, pág. 69. Una vez un documento es catalogado como público, todo

ciudadano y ciudadana, por el hecho de serlo, tiene legitimación activa para solicitar y acceder a información pública. Kilómetro 0 v. Pesquera López et al*., supra*; Engeneering Services v. AEE*, supra,* pág. 147; Colón Cabrera v. Caribbean Petroleum, 170 DPR 582, 589 (2007); Ortiz v. Dir. Adm. de los Tribunales, *supra*, pág. 176. Ello, pues "[e]n la medida en que todo ciudadano tiene el derecho a inspeccionar cualquier documento público, el acto de denegar el acceso, por sí mismo, causa al solicitante un daño claro, palpable y real". Engeneering Services v. AEE*, supra*, Ortiz v. Dir. Adm. de los Tribunales, *supra*, pág. 177.

**B. Ley 141-2019**

A los fines de establecer la política pública de acceso a la información, se promulgó la *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública*, Ley Núm. 141 de 1 de agosto de 2019 (Ley 141-2019). La aludida Ley, nos dice en su Artículo 3 lo siguiente:

> Se establece como política pública del Gobierno de Puerto Rico lo siguiente:
> 1) La información y documentación **que produce el gobierno se presume pública y accesible** a todas las personas por igual.
> 2) La información y documentación que produce el gobierno en sus estudios, transacciones y en el ejercicio de la autoridad pública, de manera directa o delegada, son patrimonio y memoria del pueblo de Puerto Rico.
> 3) El derecho constitucional de acceso a la información requiere la transparencia gubernamental.
> 4) Toda información o documento **que se origine, conserve o reciba en cualquier dependencia del Gobierno**, aunque se encuentre bajo la custodia de un tercero, se presume público y debe estar accesible al Pueblo y la prensa.
> 5) El derecho de acceso a la información pública es un pilar constitucional y un derecho humano fundamental.
> 6) El acceso a la documentación e información pública tiene que ser ágil, económico y expedito.
> 7) Toda persona tiene derecho a obtener la información y documentación pública, sujeto a las normas y excepciones aplicables.
> 8) El Gobierno de Puerto Rico establece en la presente Ley una política de apertura a la información y documentación, que incluya la disponibilidad de la

tecnología y de los avances necesarios para hacer valer el derecho de los solicitantes a acceder a la información y documentación pública de forma oportuna, objetiva, veraz, completa, reutilizable, procesable y disponible en formatos accesibles, inalterados e íntegros. (Énfasis dado).

3 LPRA sec. 9913.

Por su parte, el Artículo 4 de la Ley 141-2019, provee que:

En el Gobierno de Puerto Rico se facilitará el acceso a la información pública y se divulgará rutinariamente a través de sus páginas electrónicas oficiales y mediante otros medios de comunicación la información sobre su funcionamiento, acciones y los resultados de su gestión. La entidad gubernamental tiene el deber de divulgar en su página electrónica oficial, de forma periódica, proactiva y actualizada, la información sobre su funcionamiento, la ejecución y control de las funciones delegadas, **así como toda documentación pública que sea realizada por la entidad de forma rutinaria.** No serán información pública los expedientes de personal o cualquier información de esta índole. Además, establecerá mecanismos adecuados para facilitar la accesibilidad, calidad y reutilización de la información publicada electrónicamente, así como su identificación y localización. (Énfasis nuestro).

3 LPRA sec. 9914

A su vez, el Artículo 6 la Ley 141-2019, indica así:

Cualquier persona podrá solicitar información pública mediante solicitud escrita o por vía electrónica, sin necesidad de acreditar algún interés particular o jurídico. El Oficial de Información tendrá la responsabilidad de notificar, por email, fax o correo regular, a todo peticionario de información o documentación pública que su solicitud fue recibida y el número de identificación de la misma.

La solicitud de información deberá incluir al menos una dirección o correo electrónico para recibir notificaciones, el formato en que desea recibir la información y una descripción de la información que solicita.

3 LPRA sec. 9916

De otro lado, el Artículo 7 de la Ley 141-2019 señala, que:

Sujeto a las disposiciones de esta Ley, los Oficiales de Información de una entidad gubernamental deberán producir cualquier información pública para su inspección, reproducción o ambos, a petición de cualquier solicitante, en un término no mayor de diez (10) días laborables. En el caso de la Rama Ejecutiva, la Oficina a nivel central de la agencia o entidad gubernamental, deberá cumplir con el término antes indicado. No obstante, si la solicitud se hace directamente a nivel de una Oficina regional de la agencia o entidad gubernamental el término para

> entregar la información no podrá ser mayor de quince (15) días laborables. […]
>
> Los Oficiales de Información cumplen con los parámetros de esta Ley si, según las preferencias del solicitante, realizan una de estas acciones:
>
> a)  Hacen la información disponible al solicitante en las oficinas de la entidad gubernamental para su inspección y reproducción;
> b)  Envían información al solicitante por correo electrónico;
> c)  Envían copia de la información por correo federal (*First Class*), siempre y cuando, el solicitante esté dispuesto a pagar por sello y otros costos asociados; o
> d)  Proveen al solicitante una dirección de internet (URL) de una página web con instrucciones para acceder a la información solicitada. (énfasis dado)

3 LPRA sec. 9917

Para efectos de interpretación de esta Ley, el Artículo 12 dispone que "deberá interpretarse en la forma más liberal y beneficiosa para la persona solicitante de información pública. En caso de conflicto entre las disposiciones de esta Ley y la de cualquier otra legislación, prevalecerá aquella que resulte más favorable para la persona solicitante de información y documentación pública." 3 LPRA sec. 9922.

### C. Ley de Reforma Educativa de Puerto Rico

Mediante la Ley de Reforma Educativa de Puerto Rico, Ley 85-2018 (Ley 85-2018), el Gobierno de Puerto Rico estableció, entre otros, un Sistema de Educación Pública descentralizado, con más opciones educativas para los estudiantes y garantizar una distribución equitativa de los recursos. Ver Artículo 1.02 (b), 3 LPRA sec. 9801a.

El Artículo 2.12 de la Ley 85-2018 dispone de los Deberes y Responsabilidades del Director de Escuela. En particular, los incisos "j" y "r" indican como sigue:

> j. Rendir informes periódicos a la Oficina Regional Educativa pertinentes a la matrícula y gestión educativa de la escuela.

r. Establecer una bitácora que detalle los esfuerzos exitosos e infructuosos para lograr las metas.
3 LPRA sec. 9802i

El Artículo 11.01 de la Ley 85-2018 establece que los padres, tutores o encargados, podrán: "[e]xigir calidad educativa en beneficio de los estudiantes, lo que incluye ciento ochenta (180) días de contacto de seis (6) horas diarias de su hijo, con un maestro calificado para enseñar la materia y en el nivel que cursa." 3 LPRA sec. 9811(d).

### D. Desestimación

Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, faculta a la parte contra la cual se presente una reclamación a presentar una moción de desestimación, por los fundamentos siguientes: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio, y (6) dejar de acumular una parte indispensable. Rivera Candela v. Universal Insurance, 2024 TSPR 99, 214 DPR __ (2024); Blassino Alvarado et al. v. Reyes Blassino et al., 2024 TSPR 93, 214 DPR __ (2024); Costas Elena y otros v. Magic Sport y otros, 2024 TSPR 13, 213 DPR __ (2024); Cobra Acquisitions v. Mun. de Yabucoa et al., 210 DPR 384, 396 (2022); Rivera Sanfeliz et al. v. Jta. Dir. FirstBank, 193 DPR 38, 49 (2015); Colón Rivera et al. v. ELA, 189 DPR 1033, 1049 (2013).

Asimismo, el Tribunal Supremo ha establecido que, al momento de considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. Rivera Candela v. Universal Insurance, supra, Cobra Acquisitions v. Mun. Yabucoa et al., supra; Casillas Carrasquillo v. ELA, 209 DPR 240, 247 (2022);

Cruz Pérez v. Roldán Rodríguez et al., 206 DPR 261, 267 (2021). Es por esto por lo que, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de Derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor". Cobra Acquisitions v. Mun. Yabucoa et al., *supra*. De esta manera, los tribunales deben evaluar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida". Rivera Candela v. Universal Insurance, *supra*; Casillas Carrasquillo v. ELA, *supra*, pág. 267, citando a Pressure Vessels P.R. v. Empire Gas P.R., 137 DPR 497, 505 (1994).

### E. Certiorari

El recurso de *certiorari* constituye un vehículo procesal de carácter discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. Rivera et al. v. Arcos Dorado et al., 212 DPR 194, 207 (2023); Torres González v. Zaragoza Meléndez, 211 DPR 821, 403 (2023); McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021); 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); IG Builders et al. v. BBVAPR, 185 DPR 307, 337-338 (2012). El adecuado ejercicio de la discreción está "inexorable e indefectiblemente atado al concepto de la razonabilidad". García v. Asociación, 165 DPR 311, 321 (2005).

Al tratarse evaluar un recurso de *Certiorari* nuestros oficios se encuentran enmarcados en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B que en su Regla 40 señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Torres Martínez

v. Torres Ghigliotty, 175 DPR 83, 97 (2008). La referida regla

dispone lo siguiente:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En el ámbito judicial, la discreción del tribunal revisor no

debe abstraerse del resto del Derecho y, por lo tanto, es una

forma de razonabilidad aplicada al discernimiento judicial para así

llegar a una conclusión justiciera. 800 Ponce de León v. AIG,

supra; Mun. Caguas v. JRO Construction, 201 DPR 703, 712

(2019); IG Builders et al. v. BBVAPR, supra, pág. 338. De manera

que, los foros apelativos solo intervendremos con el ejercicio de

la discreción del foro revisado en aquellas instancias que se

demuestre que este último (1) actuó con prejuicio o parcialidad;

(2) incurrió en un craso abuso de discreción; o (3) se equivocó en

la interpretación de cualquier norma procesal o de derecho

sustantivo. Rivera et al. v. Arcos Dorados et al., supra.

**III.**

El Peticionario alega que la información que produjo el

Departamento de Educación no contenía el conteo exacto y

preciso de los días de clases cancelados.[5]   Sostuvo que, la información de la suspensión de clases por el huracán Irma fue vaga e imprecisa.  Además, que no todas las escuelas ni regiones abrieron al mismo tiempo luego de un evento de esta índole.[6]  Mencionó que el Departamento de Educación satisfizo parcialmente el requerimiento de información.[7]  Adujo que no era creíble que el Departamento tuviese que cumplir con 180 días lectivos en un año académico y que, a su vez, omitiera recolectar la información.   Agregaron que el Departamento proveyó al *Federal Emergency Management Agency* (FEMA) y al Departamento de Educación Federal, la información sobre los días lectivos de clases que fueron perdidos.[8]  Indican que es increíble que se reportaran solo 17 días lectivos de cancelación de clases entre los años 2015 y 2024, si luego del paso de los Huracanes Irma y María en el año 2017 se documentaron áreas sin energía eléctricas por meses.  Indicó que posteriormente en el año 2020 hubo una serie de terremotos, más los efectos del COVID 19.[9]  Manifestó que el director escolar, para cumplir con el deber de rendir informes periódicos, a tenor con el inciso 2.12 de la Ley 85-2018, debe recopilar cuántos días lectivos fueron completados.[10]  Alegó que no procedía desestimar la acción por *academicidad* en la medida en que el Departamento se niega a compartir la información solicitada.

El Departamento, por su parte, alegó que la obligación de proveer la documentación que se le solicite no se extiende a crear un documento inexistente, máxime cuando esa tarea no es una obligación impuesta en ley ni es parte de sus deberes

---

[5] Recurso de apelación, pág. 8.
[6] Recurso de apelación, pág. 8.
[7] Recurso de apelación, pág. 9.
[8] Recurso de apelación, pág. 11.
[9] Recurso de apelación, pág. 12.
[10] Recurso de apelación, págs. 14-15.

ministeriales. Señaló que, a tenor con la Ley[11], la obligación de divulgar rutinariamente toda la información sobre su gestión se refiere a aquellos documentos que la Agencia produce rutinariamente. Sostuvo que junto a la *Moción de Desestimación* incluyó una *Certificación* de la Dra. Lydiana I. López Díaz, Secretaria Auxiliar de Planificación y Rendimiento del Departamento de Educación. Declaró que en ese documento, la Dra. López Díaz legitimó la información que había compartido con el Peticionario y, además, que, de los registros, no constaba que existiera información adicional a la ya compartida.

Por otro lado, el Departamento aludió a las Leyes números 141-2019, 85-2018, así como a la Ley 2-2019 conocida como la *Ley de Continuidad Educativa ante Emergencias por Fuerza Mayor en el Sistema de Educación Pública de Puerto Rico*. Explicó que ninguno de estos estatutos requiere que el Departamento realice un conteo exacto de los días lectivos cancelados por motivo de situaciones de emergencia para fines estadísticos.[12] En cuanto a las funciones del Director Escolar y la preparación de informes, a tenor con el Artículo 2.12 de la Ley 85-2018, adujo que El Puente, en ningún momento, presentó ese argumento en el recurso especial que instó en el TPI. Argumentó que esos informes o bitácoras no contienen el conteo de los días de clases perdidos por motivo de emergencia, por tanto, la información no pudo ser provista.

Evaluamos.

Es norma asentada que cualquier ciudadano tiene derecho a obtener documentos públicos que se originen, conserven o reciban en el curso de los procedimientos del organismo

---

[11] Ley 141-2019 y Ley 85-2018.
[12] Alegato del Departamento, págs. 7-9.

gubernamental.[13]  Por su parte, el Gobierno debe facilitar el acceso a la documentación que origine de forma rutinaria.[14]

A tenor con la antes mencionada normativa, El Puente presentó un *Recurso Especial de Acceso a la Información*.  Allí le requirió al Departamento de Educación que le supliera, "todos los récords y documentos en los que se hayan recogido o documentado las cancelaciones de clases por razones de 1) emergencias, 2) eventos atmosféricos y 3) falta de luz o agua, para cada escuela del archipiélago desde el año 2015 hasta el presente."[15]

En respuesta, el Departamento de Educación presentó una *Solicitud de Desestimación a Recurso Especial de Acceso a Información Pública*.[16]  Expresó que le entregó al Peticionario la información que tenía disponible en torno a la cancelación de clases por razones de emergencia y eventos atmosféricos.  Reiteró, además, que no contaba con un archivo con el conteo exacto o completo de los días cancelados por motivo de emergencias.  Que tampoco tenía la obligación de crear un documento inexistente."[17] El Departamento de Educación informó que le suplió a El Puente una serie de documentos con la información sobre las clases suspendidas por diversas razones. En particular, incluyó una tabla en formato *pdf* que contenía las fechas de suspensión de clases por eventos atmosféricos de los años 2015 al 2024.   El Departamento también incluyó una lista de los documentos que le suplió al Peticionario los días 5, 13 y 14 de marzo de 2024.

---

[13] Ver Artículo 409 del Código de Enjuiciamiento Civil, *supra*; Ley 5-1955; Ley 141-2019; Kilómetro 0 v. Pesquera López et al., *supra*.
[14] Artículo 4 de la Ley 141-2019.
[15] Apéndice pág. 217.
[16] Apéndice págs. 63-72 con los anejos, en las páginas 73-232.
[17] Apéndice pág. 64.

El Foro Primario determinó desestimar la acción especial de acceso a la información, toda vez que la acción era improcedente. Entendió que el Departamento de Educación no tenía la obligación de entregar o divulgar documentos que, como parte de sus funciones, no genere. Es decir, resolvió que el Departamento sólo estaba obligado a entregar la información que produjera, originara, conservara o recibiera rutinariamente, según le facultase su Ley Habilitadora.

Del expediente se desprende que el Departamento de Educación le suplió al Peticionario la información que tenía disponible en cuanto a las cancelaciones de clases por razón de emergencias, eventos atmosféricos y falta de luz o agua. En particular, el Departamento recopiló una tabla con las fechas suspensión de clases por eventos atmosféricos durante el período de los años 2015 al 2024. Del referido documento surge la información sobre los días de clases suspendidos por razón de tormentas, huracanes, apagones de energía eléctrica, sismos, COVID 19, inundaciones, explosiones eléctricas, aguaceros, así como, por la ola de calor. Además, corroboramos que el Departamento le entregó al Peticionario diversos documentos que respaldan la información.

Asimismo, el Departamento le suplió al Peticionario una *Certificación* de la Dra. López Díaz, Secretaria Auxiliar de Planificación y Rendimiento del Departamento de Educación. En este documento, la funcionaria mencionó todas las gestiones realizadas para obtener la información que le fue divulgada a El Puente y acreditó que no constaba con información adicional a la compartida. Todo lo descrito anteriormente nos lleva a concluir que el Departamento cumplió con su deber de suplir la información que estos generan como parte de sus funciones. Precisa destacar que, entendemos que el Departamento solo está

obligado a producir información que genere de forma rutinaria, lo cual hizo.

En cambio, el Peticionario no aludió a disposición en Ley alguna que le requiera al Departamento de Educación a producir, como parte del curso ordinario de sus oficios, algún documento con el conteo exacto o completo de los días cancelados por motivo de emergencias. En el recurso de apelación, el Peticionario mencionó el Artículo 2.12 de la *Ley de Reforma Educativa*, Ley 85-2018, para inferir que el Director Escolar debía realizar un informe o bitácora de los días de clases cancelados. No obstante, del referido artículo tampoco surge con especificidad tal deber. Independientemente a ello, corroboramos este argumento no fue presentado ante el Foro Primario en el *Recurso Especial.* Por lo que, en Apelación no podemos considerar teorías o asuntos nuevos. Ver <u>Vera v. Dr. Bravo</u>, 161 DPR 308, 334-335 (2004).

Consecuentemente, concluimos que la "Sentencia" aquí recurrida, mediante el cual el Foro Primario decretó que era improcedente el *Recurso Especial de Acceso a Información Pública*, resulta correcta. La Sala de Instancia realizó una juiciosa y prudente evaluación del derecho y los hechos ante su consideración, dirigida a procurar la más correcta adjudicación del caso.

**IV.**

Por los fundamentos antes expresados que hacemos formar parte de esta Sentencia, expedimos el *Auto de Certiorari* y *Confirmamos* la "Sentencia" recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones