<table>
<tr><td colspan="3" align="center">ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>TRIBUNAL DE APELACIONES<br>PANEL VI</td></tr>
<tr>
<td>FRANCIS X. RYAN; THE PATRIOTS FOUNDATION<br><br>Apelantes<br><br>v.<br><br>OFICINA DE ADMINISTRACIÓN DE LOS TRIBUNALES<br><br>Apelada</td>
<td>TA2026AP00207<br><br><br>consolidado con</td>
<td>*Apelación,*<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV08561<br><br>Sobre: Recurso Especial de Revisión Judicial para el Acceso a Información Pública (Ley Núm. 141-2019, según enmendada)</td>
</tr>
<tr>
<td>FRANCIS X. RYAN; THE PATRIOTS FOUNDATION<br><br>Apelantes<br><br>v.<br><br>OFICINA DE ADMINISTRACIÓN DE LOS TRIBUNALES<br><br>Apelada</td>
<td>TA2026AP00208</td>
<td>*Apelación,*<br>procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV08573<br><br>Sobre: Recurso Especial de Revisión Judicial para el Acceso a Información Pública (Ley Núm. 141-2019, según enmendada)</td>
</tr>
</table>

Panel integrado por su presidente el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de marzo de 2026.

Comparecen Francis X. Ryan ("señor Ryan") y The Patriots Foundation (en conjunto, "Apelantes") mediante los recursos de apelación clasificados alfanuméricamente como **TA2026AP00207** y **TA2026AP00208**. Nos solicitan que revoquemos unas Resoluciones emitidas, respectivamente, el 27 de enero de 2026, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI"). En virtud de los aludidos dictámenes, el TPI desestimó los Recursos Especiales de Revisión Judicial para el Acceso a Información Pública presentados por los apelantes.

Por los fundamentos que proceden, se *confirman* las determinaciones apeladas.

**I.**

El 29 de julio de 2025, el señor Ryan y The Patriots Foundation le solicitaron a la Oficina de Administración de los Tribunales ("OAT" o "Apelada"), al amparo de la Ley 141-2019, según enmendada, conocida como la *"Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública"*, 3 LPRA sec. 9911 *et seq.*, todos los documentos y comunicaciones relacionadas a los vínculos de la Hon. Mayra Huergo Cardoso y la Hon. Lissette Toro Vélez con el *Environmental Law Institute´s* ("ELI") *Climate Judiciary Project* ("CJP") y/o su programa conocido como el *Judicial Leader in Climate Science* ("JLCS"), comenzando desde el 1 de enero de 2018 hasta el presente. Especificaron que sus peticiones incluían toda información relacionada, pero sin limitarse, a lo siguiente:

1. Participation or attendance at in-person or online meetings, presentations, conferences, or discussions hosted by ELI, CJP, or JLCS.
2. Travel plans, expenses, reimbursements, stipends, or compensation for participation in ELI, CJP, or JLCS events, meetings, conferences, or discussions, including but not limited to any public financial disclosure filed by [Judge Huergo Cardoso and Judge Toro Vélez] reflecting the same.
3. Drafts and final versions of ELI, CJP, or JLCS presentations prepared by [Judge Huergo Cardoso and Judge Toro Vélez] or [their] staff.
4. Drafts and final versions of ELI, CJP, or JLCS presentations sent to, presented to, or shared with [Judge Huergo Cardoso and Judge Toro Vélez] or [their] staff.
5. Communications between [Judge Huergo Cardoso and Judge Toro Vélez] or [their] staff and ELI, CJP, or JLCS presenters, panelists, or attendees, including but not limited to email communications, list-servs, text messages, chat groups, Slack chats, or any other method of communication.
6. Communications between [Judge Huergo Cardoso and Judge Toro Vélez] or [their] staff and ELI, CJP, or JLCS employees, officers, or affiliates, including but not limited to those with an eli.org email address or the email address phanle@protonmail.com.[1]

El 15 de agosto de 2025, la OAT denegó los petitorios de los apelantes, debido a que, ELI, CJP y JLCS eran entidades privadas. Expuso, también, que las solicitudes no proveyeron una descripción específica, detallada y no general

---

[1] Véase, Apéndices de los recursos, Entradas Núm. 1, Anejos 1.

de la información solicitada, contrario a lo exigido por la Ley 141-2019, *supra*. Asimismo, la OAT advirtió que solicitaban documentos correspondientes a un periodo que abarcaba más de siete (7) años, los cuales se encontraban localizados en múltiples plataformas. Como corolario, expresó que, sin una identificación precisa de la información interesada, la petición resultaba amplia y ambigua, razón por la cual la misma no podía ser concedida. Añadió que la aludida descripción también le impedía precisar el alcance exacto de la información, así como determinar si incluía datos confidenciales o privilegiados que no eran susceptibles de ser divulgados. Manifestó, además, que la Hon. Huergo Cardoso ya no ocupaba cargo alguno dentro del Poder Judicial. A su vez, en cuanto a los informes financieros de las juezas, les refirió al "Reglamento Aplicable al Canon X de los Cánones de Ética Judicial sobre los Informes de Divulgación de Actividad Financiera de Jueces u Otro Personal de la Rama Judicial". Por último, en la medida que los apelantes interesaran obtener información general sobre las conferencias, eventos o discusiones ofrecidas por el Poder Judicial, les explicaron que la misma es publicada periódicamente en el Portal institucional. En atención a ello, la OAT incluyó los enlaces correspondientes a dos (2) comunicados de prensa que reseñaban, respectivamente, la sesión especial celebrada por la jubilación de la Hon. Huergo Cardoso y la capacitación ofrecida a miembros de la Judicatura como parte de la *Segunda Jornada sobre Justicia y Derecho: Cambio Climático en Puerto Rico*.

El 20 de agosto de 2025, los apelantes solicitaron la reconsideración ante la OAT. Arguyeron que las comunicaciones entre un funcionario público y una organización privada no están cobijadas bajo ninguna protección. Replicaron, además, que ofrecieron una descripción detallada de la información que interesaban obtener. Así, también, adujeron que la OAT tiene el deber de proveer acceso a información pública. Por último, ante el señalamiento de la OAT en cuanto al periodo de siete (7) años solicitado, señalaron que estaban dispuestos a reducirlo, comenzando desde el año 2022 hasta el presente.

El 12 de septiembre de 2025, la OAT reiteró las denegatorias previamente comunicadas, por los mismos fundamentos. Inconformes, el 23 de septiembre de 2025, los apelantes presentaron ante el TPI dos (2) Recursos Especiales de Revisión Judicial para el Acceso a Información Pública en contra de la OAT. Para sustentar sus reclamos, anejaron todas las comunicaciones relacionadas a las solicitudes de acceso a la información pública sostenidas entre sí y la OAT.

Tras varias instancias, el 31 de octubre de 2025, la OAT radicó, respectivamente, unas solicitudes de desestimación. Manifestó que, según se le explicó a la parte apelante, ELI no formaba parte del Poder Judicial y, como resultado, cualquier solicitud de información relacionada con la organización debía ser canalizada directamente con la entidad privada. Sostuvo, a su vez, que los petitorios resultaban amplios y ambiguos, por lo cual, incumplían con los parámetros establecidos por la Ley 141-2019, *supra.* Así dispuesto, solicitó que se desestimaran los Recursos Especiales instados por los apelantes.

El 20 de noviembre de 2025, los apelantes radicaron unas mociones intituladas *Appellant´s Response in Opposition to Respondent´s Motion to Dismiss.* Arguyeron que, contrario a lo alegado por la OAT, las Revisiones Especiales cumplían con los requisitos exigidos estatutariamente. Detallaron que no procedían las desestimaciones, ya que, tomando como ciertas las alegaciones contenidas en las Revisiones Especiales, se desprendía que la OAT actuó contrario a derecho al negarles acceso a información pública. Por otra parte, sostuvieron que proveer acceso a la información solicitada no constituiría una carga onerosa para la parte apelada. No obstante, razonaron que, de constituir una carga onerosa, ello, de por sí, no justificaba impedir el acceso a la información pública.

Atendidos los planteamientos, el 27 de enero de 2026, el TPI emitió unas Resoluciones Finales en virtud de las cuales desestimó las peticiones instadas por los apelantes. Determinó que los requerimientos de información, según redactados, no describieron la información solicitada, conforme exige el Art. 6 de

la Ley 141-2019, 3 LPRA sec. 9916. Así dispuesto, concluyó que, las solicitudes de documentos resultaron excesivas, amplias, ambiguas e imprecisas.

Insatisfechos, el 26 de febrero de 2026, los apelantes acudieron ante esta Curia mediante los recursos de apelación de epígrafe, en los cuales señalaron exactamente los mismos errores, a saber:

> **El Tribunal de Primera Instancia erró como cuestión de derecho y/o abusó de su discreción al sostener que una solicitud de información bajo la Ley 141-2019 debe ser denegada per se cuando el gobierno alega que la información no puede ser producida dentro del término estatutario de 10 días.**

> **El Tribunal de Primera Instancia cometió un error de derecho y/o abusó de su discreción al concluir que la información solicitada por la Fundación no estaba razonablemente descrita y resultaba onerosa de producir.**

El 12 de marzo de 2026, la OAT radicó una *Solicitud de Consolidación*, a la cual se allanó la parte apelante mediante moción presentada el 13 de marzo de 2026. Siendo así, el 16 de marzo de 2025 emitimos una *Resolución* en virtud de la cual consolidamos ambos recursos. El 26 de marzo de 2026 la parte apelada presentó su *Alegato de la Oficina de Administración de los Tribunales*. Perfeccionado el recurso y contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

En nuestra jurisdicción, se ha reconocido un derecho fundamental al acceso a la información pública, estrechamente relacionado con los derechos a la libertad de palabra, prensa y asociación. Art. II, sec. 4, Const. PR, LPRA, Tomo I; *Kilómetro 0 v. Pesquera López et al.*, 207 DPR 200, 207 (2021). *Véase, Soto v. Srio. de Justicia*, 112 DPR 477, 485-486 (1982). Este derecho permite evaluar y fiscalizar de forma más adecuada la función pública, además de propiciar una participación ciudadana más efectiva e inteligente en los procesos gubernamentales. *Kilómetro 0 v. Pesquera López et al., supra*, pág. 208; *Engineering Services v. AEE*, 205 DPR 136, 146 (2020); *Trans Ad de P.R. v. Junta de Subastas*, 174 DPR 56, 67 (2008). A su vez, promueve la transparencia en la gestión gubernamental y fortalece una sana administración pública. *Íd.*

Cónsono con dicho mandato constitucional, el Artículo 409 del Código de Enjuiciamiento Civil de Puerto Rico reconoce que "todo ciudadano tiene derecho a inspeccionar y sacar copia de cualquier documento público de Puerto Rico, salvo lo expresamente dispuesto en contrario por la ley". 32 LPRA sec. 1781. En lo aquí pertinente, el Art. 3 (p) de la Ley 107-2025, según enmendada, conocida como la "Ley de Administración y Conservación de Documentos Públicos para el Siglo XXI", define el término "documento público de la siguiente manera:

> Documento público. — Se refiere a todo documento que se origina, conserve o reciba en cualquier dependencia del Gobierno de acuerdo con la ley o en relación con el manejo de los asuntos públicos, incluyendo las publicaciones generadas por las dependencias gubernamentales, y que se tenga que conservar permanente o temporalmente como prueba de las transacciones por su utilidad administrativa, valor legal, fiscal, cultural o informativo, según sea el caso, o que se vaya a destruir por no tener valor permanente ni utilidad administrativa, legal, fiscal, cultural o informativa.

A los fines de pautar mecanismos procesales sencillos, ágiles y económicos para la solicitud y acceso a documentos e información pública, la legislatura puertorriqueña adoptó la Ley 141-2019, según enmendada, mejor conocida como la "Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública", 3 LPRA sec. 9911 *et seq.* La aplicabilidad de esta legislación se extiende a la rama legislativa, la rama judicial y la rama ejecutiva, incluyendo en esta a todas las entidades gubernamentales, corporaciones públicas y los municipios. Art. 2 de la Ley 141-2019, 3 LPRA sec. 9912. Así pues, se establece como política pública lo siguiente:

(1) La información y documentación que produce el gobierno se presume pública y accesible a todas las personas por igual.

(2) La información y documentación que produce el gobierno en sus estudios, transacciones y en el ejercicio de la autoridad pública, de manera directa o delegada, son patrimonio y memoria del pueblo de Puerto Rico.

(3) El derecho constitucional de acceso a la información requiere la transparencia gubernamental.

(4) Toda información o documento que se origine, conserve o reciba en cualquier dependencia del Gobierno, aunque se encuentre bajo la custodia de un tercero, se presume público y debe estar accesible al Pueblo y la prensa.

(5) El derecho de acceso a la información pública es un pilar constitucional y un derecho humano fundamental.

(6) El acceso a la documentación e información pública tiene que ser ágil, económico y expedito.

(7) Toda persona tiene derecho a obtener la información y documentación pública, sujeto a las normas y excepciones aplicables.

(8) El Gobierno de Puerto Rico establece en la presente Ley una política de apertura a la información y documentación, que incluya la disponibilidad de la tecnología y de los avances necesarios para hacer valer el derecho de los solicitantes a acceder a la información y documentación pública de forma oportuna, objetiva, veraz, completa, reutilizable, procesable y disponible en formatos accesibles, inalterados e íntegros. Art. 3 de la Ley 141-2019, 3 LPRA sec. 9913.

En concordancia con lo antes indicado, toda persona podrá solicitar información pública mediante solicitud escrita o por vía electrónica, sin necesidad de demostrar interés particular o jurídico. Art. 6 de la Ley 141-2019, 3 LPRA sec. 9916. A esos efectos, "la solicitud de información deberá incluir al menos una dirección o correo electrónico para recibir notificaciones, el formato en que desea recibir la información y una descripción de la información que solicita". *Íd.* Sin embargo, "[e]l derecho de acceso a determinada información en poder del Estado depende, en primer lugar, de si la información solicitada es en realidad información pública". *Ortiz v. Dir. Adm. De Los Tribunales*, 152 DPR 161, 176 (2000).

En particular, los Oficiales de Información de una entidad gubernamental deberán producir cualquier información pública para su inspección, reproducción o ambos, a petición de cualquier solicitante, en un término no mayor de diez (10) días laborables.[2] Art. 7 de la Ley 141-2019, 3 LPRA sec. 9917. En caso de denegar la divulgación de información pública, la decisión deberá "especificar por escrito los fundamentos jurídicos en los que se basa la denegatoria o negativa de entregarla en el término establecido". *Íd.* Ahora bien,

---

[2] El Art. 7 de la Ley 141-2019, *supra*, fue enmendado por la Ley Núm. 156 de 13 de diciembre de 2025, a los efectos de aumentar el término disponible para hacer entrega de la información solicitada, dependiendo de su antigüedad. No obstante, se utilizará el término de diez (10) días previamente dispuesto, por haber sido el vigente al momento de las peticiones.

como consecuencia de dicha denegatoria o ante la fata de entrega de información solicitada en el término establecido, el solicitante podrá instar un Recurso Especial de Acceso a Información Pública ante el Tribunal de Primera Instancia. Art. 9 de la Ley 141-2019, 3 LPRA sec. 9919.

El Estado no puede negarse de manera caprichosa ni arbitraria a permitir su acceso. *Colón Cabrera v. Caribbean Petroleum,* 170 DPR 582, 590 (2007). Por tal razón, la negativa debe estar debidamente fundamentada y justificada. *Íd.* Siendo ello así, se ha establecido que, para que el Estado pueda reclamar la confidencialidad de cierta información, será necesario lo siguiente: (1) una ley que así lo declare; (2) la comunicación debe estar protegida por algún privilegio evidenciario; (3) la divulgación de la información podría vulnerar derechos fundamentales de terceros; (4) que se trate de un confidente, conforme a la Regla 515 de Evidencia, 32 LPRA Ap. VI; y/o (5) que sea información oficial, conforme a la Regla 514 de Evidencia, 32 LPRA Ap. VI. *Kilómetro 0, Inc. v. Pesquera López*, *supra*, pág. 210. La procedencia de alguna de estas excepciones exige que el Estado satisfaga los criterios de un escrutinio estricto. *Íd.*

Finalmente, al interpretar las disposiciones de la Ley 141-2019, *supra*, se deberá hacer de la forma más liberal y beneficiosa para el solicitante. Art. 13 de la Ley 141-2019, 3 LPRA sec. 9922. De igual forma, ante un conflicto en torno a la interpretación de la precitada ley y cualquier otra legislación, "prevalecerá aquella que resulte más favorable para la persona solicitante de información y documentación pública". *Íd.*

### III.

En el recurso que nos ocupa, los apelantes nos solicitan que revoquemos las Resoluciones Finales en virtud de las cuales el TPI desestimó sus Recursos Especiales, por incumplimiento con los requisitos de la Ley 141-2019, *supra*. Arguyen que el foro de instancia incidió al concluir que procede la desestimación cuando el gobierno reclama que no puede producir la información solicitada dentro del periodo consagrado por el Art. 7 de la Ley 141-2019, *supra*. Al respecto, manifiestan que el término dispuesto por Ley responde al interés de la

Legislatura de expedir el proceso y proveer acceso a la información con celeridad, en beneficio de los peticionarios. Debido a ello, razonan que el gobierno no puede denegar una petición bajo el fundamento de que se le imposibilita cumplir con el referido término.

Por otra parte, los apelantes sostienen que el TPI erró al determinar que la información no fue adecuadamente descrita y que, por tanto, su producción resultaba onerosa. Alegan que, de manera específica, detallaron las seis categorías de información a la cual interesaban obtener acceso. Añadieron que el hecho de que la información solicitada podría ser voluminosa tampoco justificada la denegatoria.

En cambio, la OAT expone que el requisito de una descripción precisa y específica se encuentra atado al término dispuesto por la normativa estatutaria para la producción de la información solicitada. Precisa que el término de diez (10) días, vigente al momento de las peticiones, exige especificidad en las solicitudes, con la intención de lograr identificar y proveer la documentación solicitada dentro del plazo. Esboza que, contrario a lo establecido por Ley, las peticiones de los apelantes se caracterizaron por su amplitud y falta de especificidad, ya que no aludieron a documentos específicos debidamente identificados o particularizados. Como consecuencia, sostiene que la falta de una descripción específica les impedía proveer los documentos dentro del plazo establecido.

Por estar intrínsicamente relacionados, los errores serán discutidos de manera conjunta. De entrada, advertimos que, contrario a lo argumentado por los apelantes, el foro de instancia no desestimó sus Recursos Especiales debido a que el gobierno reclamó que no podía proveer la documentación dentro del término dispuesto por la Ley 141-2019, *supra*. Conforme surge de las Resoluciones Finales, las desestimaciones respondieron al incumplimiento de la parte apelante con el requisito de describir adecuadamente la información interesada.

Ahora bien, según hemos reseñado, el Art. 6 de la Ley 141-2019, *supra*, requiere que, al solicitar acceso a información pública, se realice una descripción de los documentos peticionados. Ello, en aras de lograr identificar adecuadamente la información solicitada y, de esa manera, proveerle al peticionario la documentación con celeridad.

Destacamos que el Art. 6 de la Ley 141-2019, *supra*, no dispone cómo deberá describirse la información solicitada. No obstante, al recurrir a la definición del concepto "describir" colegimos que el mismo consiste en "[r]epresentar o **detallar** el aspecto de alguien o algo por medio del lenguaje". (Énfasis suplido). *Diccionario de la Lengua Española*, Real Academia Española, 22ed., Madrid, Ed. Espasa Calpe, 2001, T.II. A su vez, el término "detallar" implica "[t]ratar o referir algo por partes, **minuciosa y circunstanciadamente**". (Énfasis suplid) *Íd.*

La parte que interesa obtener acceso a información pública deberá cumplir con el requisito de presentar una solicitud que incluya una descripción específica y detallada de la información interesada. Una solicitud que se limite a requerir toda la documentación existente sobre un asunto determinado, incluyendo borradores, no cumple con ese requisito, por carecer del nivel de especificidad necesario para su adecuada tramitación.

Tras un examen sosegado de los Recursos Especiales, somos del criterio que la descripción provista por los apelantes resultó ambigua y amplia, ya que no detalló los documentos interesados. En esencia, la parte apelante solicitó toda documentación, producida dentro de un periodo de siete (7) años, relacionada a los vínculos de la Hon. Toro Vélez y la Hon. Huergo Cardoso con las entidades ELI, CJP y JLCS, incluyendo borradores, sin especificar dónde la OAT debía canalizar su investigación. De manera tal que no lograron identificar específica y particularmente los documentos públicos a ser entregados, de conformidad con lo requerido por la Ley 141-2019, *supra*. A pesar de lo anterior, la OAT compartió con los apelantes el enlace electrónico del portal del Poder Judicial en el cual surge información relacionada al evento sobre cambio climático donde

participaron la Hon. Toro Vélez y la Hon. Huergo Cardoso, así como miembros de las entidades ELI, CJP y JLCS.

Referente a los informes financieros, la OAT refirió a los apelantes al reglamento aplicable para su divulgación, ya que los mismos debían ser solicitados mediante un trámite distinto, según establece la Ley 1-2012, según enmendada, conocida como la *Ley de Ética Gubernamental*, 3 LPRA sec. 1854 *et seq*. Como consecuencia, la OAT tampoco podía atender la solicitud de divulgación de informes financieros mediante el trámite iniciado por el señor Francis y The Patriots Foundation.

A la luz de lo anterior, la OAT se encontraba impedida de hacer entrega de la información interesada, según fue solicitada y descrita por los apelantes. Por todo lo cual, los errores señalados no fueron cometidos.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos constar en esta *Sentencia*, se *confirman* las determinaciones recurridas.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
